**Henderson Duval HOUGHTON, Plaintiff–Appellant,**

v.

**Carroll V. SOUTH, Defendant–Appellee.**

No. 91–35124.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 7, 1991.

Decided June 11, 1992.

Allen Smith, Jr., Warm Springs, Mont., for plaintiff-appellant.

Allen B. Chronister, Chronister, Driscoll & Moreen, Helena, Mont., for defendant-appellee.

Before WALLACE, Chief Judge, HUG and RYMER, Circuit Judges.

WALLACE, Chief Judge:

Houghton appeals from the district court's summary judgment entered in favor of South, Director of the Montana Department of Institutions. The district court exercised jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291. We reverse and remand.

## I

In 1980, Houghton was charged in Montana state court with the crime of deviant sexual conduct. The court initially committed Houghton to Warm Springs State Hospital (hospital) for an evaluation of his fitness to stand trial. On July 1, 1981, Houghton was placed in the hospital's Maximum Security Unit (MSU) pursuant to a policy instituted by South in April 1981. The policy set forth procedures for the transfer of criminal court order patients from the hospital's MSU to less restrictive treatment units as a part of those patients' treatment plans. It required that: (1) the mental health professionals in charge of the patient's treatment make a recommen-dation for transfer; (2) the recommendation be reviewed by the hospital's Forensic Review Board; (3) the Forensic Review Board's recommendation be reviewed by the hospital's Chief Executive Officer; and (4) the recommendation be reviewed by the Director (South). Houghton alleges that he was subject to an additional requirement that the committing court also approve the transfer.

On November 23, 1981, Houghton was acquitted of all criminal charges on the basis of mental disease or defect. The court committed Houghton to the hospital for detention and treatment, where he was again placed in the MSU. The psychiatrist in charge of Houghton's treatment concluded that his placement in the MSU was inappropriate. In January 1982, the psychiatrist in charge of Houghton's treatment formally recommended that Houghton be transferred to a less restrictive unit. That recommendation was approved by the Forensic Review Board, consisting of professionals from throughout the hospital, and the hospital superintendent. South did not formally act on the recommendation. However, in December 1982, South requested additional information from hospital professionals concerning their request to transfer Houghton. The professionals responded in writing later that month. South, however, issued no written response to the hospital's original or renewed recommendations for Houghton's transfer.

In January 1984, the professionals in charge of Houghton's treatment, the Forensic Review Board, and the superintendent again recommended Houghton's transfer from the MSU. South approved a petition for Houghton's transfer from the MSU in February 1984. However, Houghton was not transferred to a less restrictive unit because South refused to order the transfer without approval from the state court. The state court refused to assert jurisdiction over Houghton's transfer. Houghton was finally transferred to a less restrictive unit, without state court approval, in April 1985, pursuant to a writ of habeas corpus.

Proceeding pro se, Houghton filed this lawsuit pursuant to 42 U.S.C. § 1983, alleging violations of his fourteenth amendment rights. South moved to dismiss the complaint, and the district court referred the motion to a magistrate judge. The district court later adopted the findings and recommendation of the magistrate judge and dismissed Houghton's complaint for failure to state a claim. Houghton appealed. We affirmed in part, reversed in part, and remanded, holding that "[o]n the basis of the record before us we cannot say that Houghton has failed to state a claim under section 1983 with respect to the restraints to which he is subject." *Houghton v. South*, 743 F.2d 1438, 1441 (9th Cir.1984) (*Houghton I*).

On remand, the magistrate judge conducted an evidentiary hearing on the restraint issue, and again recommended dismissal of Houghton's action. The district court adopted the recommendation. Houghton appealed, and we reversed in order to permit Houghton to amend his complaint to challenge the hospital's internal transfer policy as it had been applied to him. *Houghton v. South*, 865 F.2d 264 (9th Cir.1988) (unpublished memorandum) (*Houghton II*).

Following remand, Houghton secured counsel and filed an amended complaint alleging that the hospital's transfer policy violated his due process and equal protection rights under the fourteenth amendment. South moved for summary judgment arguing among other contentions, that he was entitled to qualified immunity from liability. The motion was again referred to the magistrate judge who made findings and recommended that South was entitled to qualified immunity. The district court agreed and granted the motion for summary judgment. Houghton now appeals for the third time.

## II

Government officials performing discretionary functions may enjoy qualified immunity from section 1983 liability for actions performed in the course of their official duties, "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (*Harlow*). We first review the district court's order holding South entitled to qualified immunity with respect to Houghton's due process claim.

■ "[T]he appealable issue is a purely legal one: whether the facts alleged (by the plaintiff, or, in some cases, the defendant) support a claim of violation of clearly established law." *Mitchell v. Forsyth*, 472 U.S. 511, 528 n. 9, 105 S.Ct. 2806, 2816 n. 9, 86 L.Ed.2d 411 (1985). A right is "clearly established" when "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) (*Anderson*). This requires more than an alleged "violation of extremely abstract rights." *Id.* at 639, 107 S.Ct. at 3039. The official's action, however, need not previously be held unlawful. *Id.* at 640, 107 S.Ct. at 3039. Rather, the unlawfulness must be apparent in light of preexisting law. *Id.* "[T]he proper fact-specific inquiry under *Anderson* is not whether the law is settled, but whether, in light of clearly established law and the information available to him, a reasonable person in [South's] position could have objectively believed his actions to be proper." *Floyd v. Laws*, 929 F.2d 1390, 1394 (9th Cir.1991), citing *Anderson*, 483 U.S. at 641, 107 S.Ct. at 3039.

■ Houghton bears the initial burden of proving that the rights allegedly violated by South were clearly established at the time of the alleged misconduct. *Davis v. Scherer*, 468 U.S. 183, 197, 104 S.Ct. 3012, 3020, 82 L.Ed.2d 139 (1984); *Baker v. Racansky*, 887 F.2d 183, 186 (9th Cir.1989). South then carries the burden of proving that his "conduct was reasonable under the applicable standards even though it might have violated [Houghton's] constitutional rights." *Benigni v. City of Hemet*, 879 F.2d 473, 480 (9th Cir.1988) (*Benigni*).

## A.

Houghton argues that *Youngberg v. Romeo,* 457 U.S. 307, 324, 102 S.Ct. 2452, 2462, 73 L.Ed.2d 28 (1982) (*Youngberg*), clearly established that institutionalized persons have a substantive due process liberty interest in "reasonably nonrestrictive confinement conditions, . . . [which] would comport fully with the purpose of . . . confinement." *Youngberg* involved a profoundly mentally retarded individual, institutionalized by his mother because she was unable to care for him. She later sued the institution, complaining about the adequacy of his care. The Court held that persons committed to state mental institutions enjoy constitutionally protected interests in "reasonable care and safety, reasonably nonrestrictive confinement conditions, and such training as may be required by these interests." *Id.*

The magistrate judge found that *Youngberg* was not decided until several months after South rejected Houghton's initial transfer request. We review this finding of fact for clear error. *United States v. McConney,* 728 F.2d 1195, 1200 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). *Youngberg* was decided in June 1982; after the hospital's January 1982 request to transfer Houghton, but before any decision had been rendered by South. Although the magistrate judge found that South's decision to deny Houghton's transfer was made prior to *Youngberg,* the record does not support this finding.

In December 1982, South requested additional information from the hospital professionals regarding the hospital's recommendation for Houghton's transfer to a less restrictive environment. In a memorandum, dated December 29, 1982, the acting director of the hospital's treatment services division responded to South's request for additional information. Thus, as of December 1982, South had not finally decided whether or not to transfer Houghton. South has pointed to no evidence supporting the magistrate judge's finding that the decision to deny Houghton's transfer was made prior to the decision in *Youngberg.*

Although the record does not reflect when, if ever, South formally denied the staff's recommendations, the record is clear that the decision not to transfer Houghton was made at least six months *after Youngberg* was decided. Even if the magistrate judge correctly found that an initial decision had been made before June 1982, the recommendation was renewed in December 1982, well after the Supreme Court issued its decision in *Youngberg. Youngberg* would have applied to any decision by South to deny this subsequent transfer request. Therefore, the district court clearly erred in adopting the magistrate judge's finding that *Youngberg* had not been decided at the time of the alleged misconduct.

## B.

■ The magistrate judge's alternative holding, also adopted by the district court, states that even if *Youngberg* had been decided before South's decision, "the legal rights established in *Youngberg* were not so unequivocal that a reasonable man in South's position would know his actions were unlawful." We review the district court's summary judgment de novo. *Kruso v. International Telephone & Telegraph Corp.,* 872 F.2d 1416, 1421 (9th Cir.1989), *cert. denied,* 496 U.S. 937, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990).

*Youngberg* clearly established that institutionalized persons have a substantive due process liberty interest in "reasonably nonrestrictive confinement conditions. . . ." 457 U.S. at 324, 102 S.Ct. at 2462. Whether Houghton's "constitutional rights have been violated must be determined by balancing his liberty interests against the relevant state interests." *Id.* at 321, 102 S.Ct. at 2461. However; *Youngberg* cautions that "[i]f there is to be any uniformity in protecting these interests, this balancing cannot be left to the unguided discretion of a judge or jury." *Id.* "Courts must show deference to the judgment exercised by a qualified professional." *Id.* at 322, 102 S.Ct. at 2461. "[T]he Constitution only requires that the courts make certain that professional judgment in fact was exercised. It is not appropriate for the courts

to specify which of several professionally acceptable choices should have been made." *Id.* at 321, 102 S.Ct. at 2461 (internal quotations omitted). Such deference is necessary to minimize judicial interference with the internal operations of state institutions. *Id.* at 322, 102 S.Ct. at 2461.

According to *Youngberg*, a "decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* at 323, 102 S.Ct. at 2462 (footnotes omitted). We have previously held that "this standard is equivalent to that required in ordinary tort cases for a finding of conscious indifference amounting to gross negligence." *Estate of Conners v. O'Connor*, 846 F.2d 1205, 1208 (9th Cir.1988) (*Estate of Conners*), *cert. denied*, 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 808 (1989). Courts are to perform the review required by *Youngberg* without substituting their own views for those of the professionals. Therefore, we hold that courts must restrict their inquiry to two questions: (1) whether the decisionmaker is a qualified professional entitled to deference, and (2) whether the decision reflects a conscious indifference amounting to gross negligence, so as to demonstrate that the decision was not based upon professional judgment.

The magistrate judge recognized the applicability of *Youngberg*, but concluded that:

> [w]hile there is evidence to support Houghton's position he was entitled to a transfer in 1982, there is also evidence he presented a substantial threat to society. Where that balance would ultimately settle is a question of fact. However, the court cannot say the answer was clear in 1982 or that it should have been clear to a reasonable person in South's position. Thus, this court finds South is protected by good faith qualified immunity and is entitled to summary judgment on this issue.

Rather than review the record to discover whether South was a qualified professional and whether South's basis for denying Houghton's transfer reflected the exercise of professional judgment, the magistrate judge reviewed the evidence to determine whether it was clear at the time of South's decision how the *Youngberg* factors should be balanced when considering Houghton's transfer. This inquiry exceeds the permissible scope of judicial review according to *Youngberg*. The magistrate judge appears to have weighed the evidence and devised his own reasons for the denial of Houghton's transfer. The proper focus of analysis, however, is on South's actual decision to deny the transfer and whether that decision should be deferred to under the *Youngberg* standard.

■■■ In addition, qualified immunity is an affirmative defense, *Harlow*, 457 U.S. at 815, 102 S.Ct. at 2736, and the burden of proving the defense lies with the official asserting it. *Id.* at 819, 102 S.Ct. at 2738; *Benigni*, 879 F.2d at 479. South moved for summary judgment on his qualified immunity defense. "Where, as here, the *moving party* bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264–65 (5th Cir.1991) (emphasis in original) (internal quotations omitted), *cert. denied*, —— U.S. ——, 112 S.Ct. 936, 117 L.Ed.2d 107 (1992); *cf. Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986) (*Anderson*) ("The judge's inquiry, therefore, unavoidably asks ... whether there is evidence upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed." (emphasis in original) (internal quotations omitted)); *see also Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F.2d 1472, 1477 (11th Cir.1991) ("But—particularly where, as here, the moving party is also the party with the burden of proof on the issue—it is important to remember the non-moving party must produce its significant, probative evidence only after the movant has

satisfied its burden of demonstrating there is no genuine issue of material fact."). South, therefore, bears the initial burden of establishing the absence of a genuine issue of fact on each issue material to his affirmative defense. Once South comes forward with this evidence, the burden shifts to Houghton to set forth specific facts showing that South was not a professional entitled to deference under *Youngberg,* or that South's basis for denying the transfer displayed "conscious indifference amounting to gross negligence." *Estate of Conners,* 846 F.2d at 1208; *see also* Fed.R.Civ.P. 56(e); *Anderson,* 477 U.S. at 256–57, 106 S.Ct. at 2514–15. *Estate of Conners,* 846 F.2d at 1208–09, does not require placing on Houghton the initial burden of coming forward with evidence to defeat the motion for summary judgment. While we discussed primarily the plaintiff's evidence in that case, we were silent on the question of which party must come forward first with evidence on a motion for summary judgment.

■ The record before us contains no evidence of South's education, training, and experience in the areas of patient treatment and hospital safety and security. *Youngberg* defined professional decisionmaker, as "a person competent, whether by education, training or experience, to make the particular decision at issue. Long-term treatment decisions normally should be made by persons with degrees in medicine or nursing, or with appropriate training in areas such as psychology...." *Youngberg,* 457 U.S. at 323 n. 30, 102 S.Ct. at 2462 n. 30. Thus, South did not meet his burden of showing that he was a qualified professional entitled to *Youngberg* deference. Nor did he provide the basis for his denial of the request by the hospital medical staff to transfer Houghton to a less restrictive confinement environment. Absent some evidence of South's professional qualifications and the basis for his decision denying Houghton's transfer, the district court could not properly conduct the review required by *Youngberg.* Therefore, we conclude that South was not entitled to summary judgment. On remand, the district court, at its discretion, may entertain a renewed motion for summary judgment consistent with this opinion.

## III

We next turn to Houghton's claim that South's policy violated his fourteenth amendment equal protection rights. South approved Houghton's transfer to a less restrictive unit in February 1984. He then instructed his attorneys, pursuant to his transfer policy, to petition the state court for approval. The state court refused to assert jurisdiction, and Houghton was not transferred until April 1985.

The final step of the transfer approval policy established by South required the committing court to approve any internal transfer of a patient to a less restrictive unit in the hospital if that patient had been committed through the state's criminal process. This requirement, however, was not part of the state court order in this case. The state court did not order Houghton confined to the MSU in the first instance; rather, it committed Houghton to the hospital for "custody, care and treatment." The court retained jurisdiction only to review applications for Houghton's *release* or *discharge* from the hospital. Houghton alleges that hospital patients who were convicted of crimes were not subject to this additional requirement, and that the policy, as applied to him, violated clearly established principles of equal protection.

We need not determine this issue if it was previously decided in *Houghton I.* There, we determined that South's policy requiring the committing court's consent for a change of status was a reasonable attempt to make uniform the procedures used for transfers of patients committed under criminal statutes, and held that the policy did not deprive Houghton of his civil rights. *Houghton I,* 743 F.2d at 1440. We followed that decision in *Houghton II,* but reversed and remanded to the district court in order to permit Houghton to amend his complaint to challenge the policy as applied to him.

In his amended complaint, Houghton again raised an equal protection attack on the validity of the internal transfer policy. Although Houghton argues that the policy is unconstitutional as applied to him, in substance, his attack pertains to an entire class of patients, acquitted of criminal charges, but nonetheless committed to the state hospital. We decided that this policy did not violate the constitution in *Houghton I* and followed that ruling in *Houghton II*. To the extent Houghton now argues that South's policy arbitrarily prevented his transfer, he alleges a deprivation of a liberty interest enumerated in *Youngberg*. That claim is addressed above. Houghton's equal protection challenge, however, has been decided against him and is now the law of the case. *See Merritt v. Mackey*, 932 F.2d 1317, 1320 (9th Cir.1991) (appellate courts will not reconsider issues previously decided by another panel on prior appeal in same case). That part of the summary judgment is, therefore, affirmed.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.