**George BRADFORD, Plaintiff,**

v.

**STATE OF HAWAII, et al., Defendants.**

**Civ. No. 93–00309 DAE.**

United States District Court,
D. Hawaii.

March 10, 1994.

Burt L. Snyder, Honolulu, HI, Kenneth J. Cusack, Gaitan & Cusack, Seattle, WA, for plaintiff.

David A. Webber, Rodney J. Tam, Office of the Atty. Gen., State of Hawaii, Honolulu, HI, for defendants.

### ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

DAVID ALAN EZRA, District Judge.

The court heard the parties' cross motions for summary judgment on March 7, 1994. Burt Snyder, Esq., and David Onsager, Esq., appeared on behalf of plaintiff; David Webber, Esq., appeared on behalf of defendants. In this case, the plaintiff challenges the requirement of the State of Hawaii, Board of Professional Engineers, Architects, Surveyors, and Landscape Architects, that surveyors have a working knowledge of certain Hawaiian language terms used in surveying in the State of Hawaii. For the reasons stated below, the court finds the requirement constitutional and accordingly grants summary judgment in favor of the defendants.

### BACKGROUND

A surveyor is defined in the Hawaii Revised Statutes as "a person who holds oneself out as able to make, or who does make cadastral surveys of areas for their correct determination and description, either for conveyancing or for the establishment or reestablishment of land boundaries or the plotting of lands and subdivisions thereof." H.R.S. § 464–1. The Professional Land Surveyor's Licensing Exam in Hawaii is administered in four parts, all of which a candidate must pass in order to receive his license.[1] Part III of the test is entitled "Hawaiian Land Matters." Some of the questions in Part III require an applicant to translate into English certain Hawaiian terms which are commonly used in land surveying in Hawaii. The other three portions of the test require

---

1. A candidate does not have to take all four parts at one time. However, at each exam, every applicant taking, for example, Part II, receives an identical copy of Part II. Def. Summary Judgment Memo, Kubota Declaration at ¶ 3.

no knowledge of any Hawaiian surveying terms. The examination questions and instructions are written in English, and the exams are graded anonymously. Kubota Declaration at ¶3.

Hawaii has incorporated knowledge of the Hawaiian land system into its surveyor's exam because this information is frequently used and interpreted by surveyors in Hawaii. Private land titles in Hawaii were initially issued as Land Commission Awards by the Board of Land Commissioners to Quiet Land Titles between 1846 and 1855. Over nine thousand individual claims were awarded by the Land Commission, in which all but a few were issued on lands that were surveyed and described by metes and bounds written in the Hawaiian language. Nuha Declaration at ¶2. Many later land grants and deeds also contain Hawaiian language terms. Ninomiya Declaration at ¶4. Surveyors in Hawaii must be familiar with both the Hawaiian land system[2] and these basic terms in order to adequately assess the condition of the land. Yamasaki Declaration at ¶2; Ninomiya Declaration at ¶4; Saiki Declaration at ¶2; Nuha Declaration at ¶2; Hee Declaration at ¶2. Often these judgments must be made on the spot, because many landowners in Hawaii will allow the surveyor to inspect the documents only in the owner's presence. Ninomiya Declaration at ¶4; Hee Declaration at ¶2. However, a surveyor's working knowledge of these key terms need not approach fluency in the Hawaiian language in order for the surveyor to satisfactorily interpret land grants and deeds. Nuha Declaration at ¶2; Saiki Declaration at ¶2.

Plaintiff George Bradford sat for the licensing exam for Professional Land Surveying in Hawaii on April 9, 1991. At that time, he was already licensed as a professional surveyor by the States of Alaska and Washington, and later became licensed in Oregon. Prior to sitting for the Hawaii exam, plaintiff obtained registration/information materials from the Board of Professional Engineers, Architects, Surveyors, and Landscape Architects ("the Board" or "the Board of Professional Engineers, et al."), the entity which designs and administers the surveyor's exam. Bradford Declaration at ¶6. The standard information sheet which the Board sent to plaintiff did not specifically mention that Part III of the test required knowledge of Hawaiian terms.[3] It did, however, refer the plaintiff to the American Congress on Surveying and Mapping ("ACSM") for questions regarding Part III of the test. Exhibit A to Bradford Declaration.

After his first unsuccessful attempt to contact the ACSM, plaintiff received a letter from the ACSM in response to his request for review materials for the exam.[4] Bradford Declaration at ¶9–11. The ACSM told plaintiff that it had no official review materials, because the annual workshops conducted by the Hawaii Association of Land Surveyors and the Hawaii Section of the ACSM had varied instructors and materials. Exhibit B to Bradford Declaration. However, the Chairman of the ACSM referred the plaintiff to two books from which candidates frequently study for the Hawaiian Land Titles portion (Part III) of the exam.[5] Id. The Chairman also invited the plaintiff to attend the March review sessions, and reminded him that he needed working knowledge of the Hawaii system in order to practice as a professional land surveyor in Hawaii. Id.

---

2. A surveyor is expected to know and understand the history of Hawaii's land system, Hawaii's system of water rights, the Hawaii Administrative Rules pertaining to shoreline certification, and the Land Court's system and rules. Ninomiya Declaration at ¶4.

3. The standard sheet sent to the plaintiff describes basic test information: whether each portion will be open-book or closed-book, the amount of time allotted for each section, the acceptable materials a candidate may bring in with him, and the passing score. It does not disclose or even hint at the information which any portion of the exam will test.

4. The court notes that plaintiff tried to contact the ACSM before the April 1991 exam but was unsuccessful. He contacted the ACSM for the first time in 1992. Although plaintiff received this letter from the ACSM long after he took the exam, he refers to its contents as relevant to his pre-exam knowledge.

5. The books cited by the Chairman were "The Great Mahele" by Jon Chinen and "The Origin of Hawaii Land Titles and of the Rights of Native Tenants" by Louis Cannelora.

At the time he sat for the exam, plaintiff was unfamiliar with the Hawaiian language in general, and with the Hawaiian land terms in particular. Bradford Declaration at ¶ 4. He was thus unable to answer the questions in Part III requiring translation, and his score on Part III of the exam was zero. He also received a zero score on Part IV of the exam, which required him to solve practical problems. See Exhibit E to Kubota Declaration. Because he failed to pass each section of the exam,[6] plaintiff was denied his surveyor's license in Hawaii.

According to the plaintiff, surveying work was immediately available to him and waiting for him in the summer of 1991. Bradford Declaration at ¶ 13. He declares that both Randy Holtz and Keith Unger were willing and able to provide him with work in July of 1991,[7] and that denial of his license robbed him of this job opportunity. He also asserts that denial of his license prevented him from pursuing additional surveying work in the subsequent months. *Id.*

Plaintiff filed the above-captioned lawsuit against the defendants, alleging that the inclusion of Hawaiian terms on the surveyor's exam violates his constitutional rights. Specifically, plaintiff alleges that the test discriminates against non-native Hawaiians and against out-of-staters, who, according to the plaintiff, have no way of learning of the Hawaiian language requirement. Plaintiff has alleged violations of 42 U.S.C. §§ 1981 and 1983 based on violation of his rights to equal protection, substantive due process, and procedural due process. On January 5, 1994, defendants filed this motion to dismiss or for summary judgment as to all of the plaintiff's claims. In response, plaintiff filed his cross motion for partial summary judgment on February 7.

## STANDARD OF REVIEW

### I. Summary Judgment

Rule 56(c) provides that summary judgment shall be entered when:

> [T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). The moving party has the initial burden of demonstrating for the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (*citing Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). However, the moving party need not produce evidence negating the existence of an element for which the opposing party will bear the burden of proof at trial. *Id.* 477 U.S. at 322, 106 S.Ct. at 2552.

Once the movant has met its burden, the opposing party has the affirmative burden of coming forward with specific facts evidencing a need for trial. Fed.R.Civ.P. 56(e). The opposing party cannot stand on its pleadings, nor simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987); Fed.R.Civ.P. 56(e). There is no genuine issue of fact "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citation omitted).

At the summary judgment stage, this court may not make credibility determinations or weigh conflicting evidence. *Musick v. Burke,* 913 F.2d 1390, 1394 (9th Cir.1990). The standard for determining a motion for summary judgment is the same standard used to determine a motion for directed verdict: does the evidence present a sufficient disagreement to require submission to a jury or is it so one-sided that one party must prevail as a matter of law. *Id.* (citation omitted).

---

**6.** A candidate must score 70 points on each section to pass the section. Exhibit A to Bradford Declaration.

**7.** The court notes that plaintiff has not submitted affidavits from either of these two men attesting to this fact.

II. Motion to Dismiss

■ A motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). A complaint should not be dismissed unless it appears to a certainty that plaintiff can prove no set of facts which would entitle the plaintiff to relief. *Neitzke v. Williams,* 490 U.S. 319, 326–27, 109 S.Ct. 1827, 1832–33, 104 L.Ed.2d 338 (1989); *Fidelity Fin. Corp. v. Federal Home Loan Bank,* 792 F.2d 1432, 1435 (9th Cir.1986), *cert. denied,* 479 U.S. 1064, 107 S.Ct. 949, 93 L.Ed.2d 998 (1987); *Stender v. Lucky Stores, Inc.,* 766 F.Supp. 830, 831 (N.D.Cal.1991). All allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. *Stender,* 766 F.Supp. at 831.

To the extent, however, that "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment." Fed.R.Civ.P. 12(b).

### DISCUSSION

I. Plaintiff's Summary Judgment Motion

■ In his motion filed February 7, 1994, plaintiff asks this court for summary judgment on his 42 U.S.C. § 1983 and due process claims. However, on July 6, 1993, the court imposed a January 5, 1994 deadline for motions. Plaintiff's summary judgment motion was filed more than one month after the deadline expired, and must be denied as untimely.

II. Defendants' Motion to Dismiss and for Summary Judgment

A. Summary Judgment as to Defendants Robert A. Alm and Noe Noe Tom [8]

■ Plaintiff has named Robert A. Alm and Noe Noe Tom as defendants in this case. Plaintiff has identified Mr. Alm as "Director of defendant Board" and Ms. Tom as "Licensing Administrator of defendant Board."

Complaint at ¶¶ 5 and 6. However, neither defendant holds the position which plaintiff identifies; in fact, neither of these positions actually exists. Alm Declaration ¶ 2; Tom Declaration at ¶ 2. Although plaintiff asserts that both of these defendants are involved in the administration of the surveyor's exam, and are therefore responsible for discriminating against him, a careful look at their respective job duties reveals that neither actively or passively participated in any discrimination which plaintiff believes he has suffered.

Neither Ms. Tom nor Mr. Alm has ever been a member of the Board. Tom Declaration at ¶ 4; Alm Declaration at ¶ 4. Rather, Mr. Alm is the former Director of Department of Commerce and Consumer Affairs (DCCA), whose duties are set forth in H.R.S. § 26–9. Alm Declaration at ¶ 2. This statute specifies that certain boards and commissions, including the Board of Professional Engineers, et al., are placed within the DCCA for administrative purposes; however, the functions, duties and powers of each of those boards and commissions are established by other statutory powers. *Id.* at ¶ 3. Members of the Board of Professional Engineers, et al., are appointed by the governor and approved by the senate,[9] and the powers and duties of the board are provided by H.R.S. ch. 464. Except for administrative support, the Director of the DCCA has no dealings with the Board of Professional Engineers, et al., and has no involvement in the formulation of the Board's licensing exams. Similarly, the Director takes no part in the licensure of applicants other than to provide clerical support in the preparation of the actual certificates. Alm Declaration at ¶ 3. The contents and administration of the exam lie wholly within the Board's discretion. H.R.S. § 464–8(c).

Noe Noe Tom has been employed as the Licensing Administrator for the DCCA since August of 1985. Tom Declaration at ¶ 2. According to Ms. Tom, the Licensing Admin-

---

**8.** Defendants have actually asked for dismissal of these defendants. However, as the court must look beyond the pleadings in order to decide whether these defendants have been properly included, this motion is more appropriately treated as a motion for summary judgment. Fed. R.Civ.P. 12(b).

**9.** H.R.S. §§ 26–34, 436B–5.

istrator takes no part in the preparation of the surveyor's licensing exam and has no responsibility or authority for determining the Board's licensing criteria. All such responsibility and authority rests entirely with the Board. *Id.* at ¶ 3.

Because plaintiff has produced no evidence to contradict the facts presented by these defendants as to their responsibilities regarding the surveyor's exam, the court finds that no genuine issue of fact exists as to the liability of defendants Robert Alm and Noe Noe Tom. Accordingly, the court grants these two defendants summary judgment.

### B. Qualified Immunity

Defendants next ask for summary judgment as to plaintiff's claims against them in their individual capacities. The parties agree that qualified immunity shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Qualified immunity "generally turns on the 'objective legal reasonableness' of the action, *Harlow,* 457 U.S. at 819 [102 S.Ct. at 2738], assessed in light of the legal rules that were 'clearly established' at the time it was taken, *id.* at 818 [102 S.Ct. at 2738]." *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987).

The Supreme Court has indicated that the right allegedly violated must be particularized:

[O]ur cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039 (citations omitted).

The Ninth Circuit has interpreted *Anderson* in the following way:

"[T]he proper fact-specific inquiry under *Anderson* is not whether the law is settled, but whether, in light of clearly established law and the information available to him, a reasonable person in [the official's] position could have objectively believed his actions to be proper." *Floyd v. Laws,* 929 F.2d 1390, 1394 (9th Cir.1991) (*citing Anderson,* 483 U.S. at 641, 107 S.Ct. at 3039).

*Houghton v. South,* 965 F.2d 1532, 1534 (9th Cir.1992).

■ A plaintiff who seeks damages for violation of constitutional or statutory rights bears the initial burden of proving that the rights allegedly violated were clearly established at the time of the alleged misconduct. *Houghton,* 965 F.2d at 1534; *Davis v. Scherer,* 468 U.S. 183, 197, 104 S.Ct. 3012, 3020, 82 L.Ed.2d 139 (1984). A court must examine the universe of statutory or decisional law to determine whether the right allegedly violated was clearly established. *Elder v. Holloway,* —— U.S. ——, 114 S.Ct. 1019, 127 L.Ed.2d 344 (1994). Qualified immunity is thus a "protective" rule which "provides ample support to all but the most plainly incompetent or those who knowingly violate the law." *Burns v. Reed,* 500 U.S. 478, 494–96, 111 S.Ct. 1934, 1944, 114 L.Ed.2d 547 (1991).

■ After reviewing the available case and statutory authority, the court can find no indication that, prior to April 1991, there existed a clearly established federal right not to be tested on knowledge of terms which are directly relevant to a certain profession, where those terms happen to be in a language other than English. While plaintiff has cited to the court a multitude of cases which support a citizen's rights to equal protection and due process, none of those cases "clearly establish" a right which would have precluded the Board of Professional Engineers, et al., from including relevant Hawaiian terms on the Hawaiian Land Matters portion of the test. *See Smothers v. Benitez,* 806 F.Supp. 299 (D.Puerto Rico 1992) (the law regarding equal protection standards for minority groups is not well developed, and

the right of a teacher to be tested in English, rather than in Spanish, has not been clearly established). *Smothers* · specifically found that no "clear statutory or constitutional protection" exists for minority language groups, and that case law in this area "is practically non-existent." 806 F.Supp. at 303. Given this lack of authority for language group protection, and the history of land ownership in Hawaii, Hawaii has not violated any clearly established right in requiring its licensed surveyors to demonstrate minimal familiarity with Hawaiian land terms before performing surveying work for the public.

Plaintiff himself admits that the right to not be tested on relevant but non-English terms "has not been expressly recognized." Plaintiff's Opposition to Summary Judgment Memo at 7. Plaintiff suggests that this court evaluate the universe of all constitutional law in order to find that defendants' actions were clearly unlawful. *Id.* Specifically, plaintiff argues that *Smothers* is distinguishable from this case because the plaintiff in *Smothers* cited no law to support the existence of a clearly established right, whereas Bradford has submitted cases on language classifications, out-of-state interests, and professional qualifications.

First, plaintiff's approach to the universe of case law plainly contradicts the instructions of the Supreme Court and of the Ninth Circuit to find the particularized right at issue clearly established for qualified immunity purposes. *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039; *Houghton,* 965 F.2d at 1534. More importantly though, while the court agrees that the State of Hawaii may not discriminate in the areas cited by plaintiff, it finds no evidence which indicates that

any of these interests are implicated by the surveyor's exam. Plaintiff's attempts to characterize the inclusion of specific Hawaiian terms as amounting to a fluency requirement [10] simply fall short. Plaintiff is no more required to attain fluency in Hawaiian in order to pass the surveyor's exam than a law student is required to become fluent in Latin in order to pass the Bar.[11] Where key terms are relevant to a practice, a practitioner must learn them in order to competently perform; that those terms are part of the working vocabulary of the profession is hardly the fault of the state organization which regulates the field. ·

Additionally, plaintiff's claim that native Hawaiians and long-term residents are advantaged by their natural access to these terms, while perhaps true, says nothing about the constitutionality of the test. Each person has the same opportunity to study for and to take the surveyor's exam, regardless of that person's national origin or residence. Knowledge of Hawaii's land system, including its distinct vocabulary, can be gained through books available both inside and outside Hawaii, and plaintiff has presented no evidence that Hawaiian residents are given information by the Board which is withheld from out-of-staters.[12] The state has also demonstrated that the tests are graded anonymously, so an exam grader has no knowledge of the candidate's place of residence or ethnicity.

Finally, plaintiff fails in his attempt to distinguish *Smothers* based on the *Smothers'* plaintiff's underinclusive submissions. The court in *Smothers* expressly based its decision on the absence of existing case or statu-

---

10. *See, e.g.,* Complaint at ¶¶ 22, 25 ("fluency in the Hawaiian language"); Plaintiff's Opposition to Summary Judgment Memo at 2 ("proficiency in the Hawaiian language"); Plaintiff's Cross–Motion for Summary Judgment at 8 ("fluent in Hawaiian").

11. Plaintiff argues that the Bar exam analogy is inappropriate because Bar exam candidates learn these terms in law school. This distinction misses the point entirely regarding whether the inclusion of certain key terms amounts to a fluency requirement. It also ignores that, in many states, a Bar exam-taker need not have attended law school prior to taking the Bar exam. A law

school degree is only required for admission to the Bar.

12. The fact that information about the test may be gained by a candidate informally, through friends or contacts, is irrelevant to the Board's responsibilities under the Constitution. If the information provided by the Board is in fact deficient under the Hawaii Administrative Rules (a matter to be decided at a state administrative hearing, as described on page 29 of the text), it is deficient as to all applicants, not merely to persons untrained in Hawaiian or residing outside the state.

tory authority, not on the absence of citations by the plaintiff. "There is no clear statutory or constitutional protection. Case law in this area is practically non-existent. The decisions involving minority language groups and equal protection on the basis of language are few and scattered throughout the circuits. These decisions do not establish a right that any official reasonably could have known existed." *Smothers*, 806 F.Supp. at 303. Because this language indicates that the *Smothers* court, on its own, considered the universe of case and statutory law, this court is unwilling to find that its evaluation of the current state of the law was inadequate or ill-informed.

On the facts set forth in the record, plaintiff has failed to demonstrate that defendants violated a clearly established right. Qualified immunity therefore immunizes defendants in their individual capacities from suit on plaintiff's claims.

### C. Summary Judgment on 42 U.S.C. § 1981 Claims

█ At the time of the April 1991 exam, Section 1981 of Title 42, United States Code, read as follows:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

The Civil Rights of 1991, effective November 21, 1991, renumbered this section as § 1981(a), without making changes, and added subparagraphs (b) and (c):

(b) Definition

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) Protection against impairment

The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. § 1981(b) and (c) (1991).

Both the Supreme Court and the Ninth Circuit have unequivocally indicated that the scope of § 1981 is limited to the rights enumerated in the statute. In 1989, the Ninth Circuit explained:

Section 1981 protects the rights of all persons, regardless of race, "to make and enforce contracts." 42 U.S.C. § 1981. The Supreme Court in *Patterson v. McLean Credit Union* [491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) ], recently clarified the scope of section 1981. The Court confirmed that section 1981 is not a "general proscription of racial discrimination in all aspects of contractual relations." *Id.* Rather it protects just two rights: (1) the right to make contracts and (2) the right to enforce contracts....

*Overby v. Chevron USA, Inc.*, 884 F.2d 470 (9th Cir.1989). The Ninth Circuit confirmed this narrow reading of the statute in 1992, emphasizing that "section 1981 extends to private conduct and protects two rights: 'the same right ... to make and enforce contracts.' *Patterson v. McLean*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989)." *Imagineering, Inc. v. Kiewit Pacific Co.*, 976 F.2d 1303, 1313 (9th Cir.1992) (ellipses in original). The court then recognized that a plaintiff must also prove intent to discriminate under § 1981:

[U]nder section 1981, [the plaintiff] must at least allege facts that would support an inference that defendants intentionally and purposefully discriminated against [him].

*Id.* (citing *Patterson*, 491 U.S. at 186–87, 109 S.Ct. at 2378).

Here, plaintiff has alleged that the Board's discrimination against him on the basis of his language inability has prevented him from pursuing and performing contracts for survey work in Hawaii. Plaintiff contends that at least two people were willing to hire him to perform specific jobs in the summer of 1991, and that his failing the exam prevented him from accepting this employment. The

court finds this argument wholly without merit for several reasons.

First, section 1981 specifically addresses discrimination based on race. The required translation of certain Hawaiian terms on the surveyor's terms does not amount to discrimination based on race; persons of all races are equally capable of learning and of translating Hawaiian terms for the exam. Minimal language facility on this exam is not so closely tied to racial or ethnic origin so as to warrant protection under section 1981.[13] Secondly, there are no facts in the record which indicate that defendants intentionally or purposefully discriminated against the plaintiff on the basis of his race in order to interfere with his right to make and enforce contracts. Plaintiff has thus failed to establish proof of intent as required by section 1981.

Next, plaintiff's asserted expectation of work, unverified by the potential employers, does not amount to a contract with which the State of Hawaii has intentionally interfered. A surveyor must be licensed in Hawaii in order to practice, and plaintiff could not have reasonably anticipated performing these jobs until he had passed the exam. In other words, plaintiff had no right to make these contracts until he was a licensed surveyor. There is no evidence indicating that defendants did anything to interfere with plaintiff's exam so as to unfairly deprive him of the opportunity to become licensed and to accept survey work.

Finally, plaintiff failed two distinct portions of the exam, each of which he needed to pass in order to pass the exam. Plaintiff's score of zero on Part IV of the exam was an independent cause of his failing the exam, rendering plaintiff incapable of accepting the promised employment contracts apart from any alleged discrimination by the State. *See*

*Imagineering,* 976 F.2d at 1313 (where there was only one prime contract to be awarded among bidders, even if defendant bidder acted wrongfully in gaining the contract over plaintiff's bid, and even if it was racially motivated, there was no section 1981 claim).

The State, by refusing to license plaintiff after his failing the exam, has therefore deprived the plaintiff of no contract to which he was entitled. The court grants the defendants summary judgment as to the section 1981 claims.

### D. 42 U.S.C. § 1983 violations

#### (1) Equal Protection

■ Plaintiff complains that he has suffered discrimination because the Board requires proficiency in the Hawaiian language in order to become a licensed surveyor. Plaintiff contends first that this requirement amounts to a classification based on language, which deserves heightened scrutiny. *Mass. Bd. of Retirement v. Murgia,* 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976) (Marshall, J., dissenting). Plaintiff next argues that, even under a rational basis test, this language requirement has no rational connection to the surveyor's ability to survey. *See Schware v. Bd. of Bar Exam. of the State of N.M.,* 353 U.S. 232, 239, 77 S.Ct. 752, 756, 1 L.Ed.2d 796 (1957) (state standards of qualification for professionals must have a rational connection to the applicant's fitness to practice his profession). Finally, plaintiff believes Hawaii impermissibly discriminates against out-of-staters by testing knowledge to which only in-staters have access.

The court has addressed many of these arguments in the qualified immunity portion of this order. First of all, despite plaintiff's characterization, the testing of certain key Hawaiian terms on one portion of the test does not amount to a fluency or proficiency

---

**13.** *See Hernandez v. New York,* 500 U.S. 352, 371–72, 111 S.Ct. 1859, 1872–73, 114 L.Ed.2d 395 (1991) (finding that, in the case before it, striking of jurors who were fluent in Spanish was not a pretext for racial discrimination):

It may well be, for certain ethnic groups and in some communities, that proficiency in a particular language, like skin color, should be treated as a surrogate for race under an equal

protection analysis. *Cf. Yu Cong Eng v. Trinidad,* 271 U.S. 500 [46 S.Ct. 619, 70 L.Ed. 1059] (1926) (law prohibiting keeping business records in other than specified languages violated equal protection rights of Chinese businessmen); *Meyer v. Nebraska,* [262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923)] (striking down law prohibiting grade schools from teaching languages other than English).

requirement so as to signal a language or racial classification.[14] All candidates, irrespective of ability to speak Hawaiian, receive the same information from the Board regarding the exam and requirement for licensure. All candidates are administered identical tests, regardless of the candidate's proficiency in English, Hawaiian, or other language. The questions and instructions are in English and the candidates respond in English. Candidates are tested anonymously, and there is no indication that candidates fluent in Hawaiian have higher pass rates on the exam overall, or on Part III in particular. Plaintiff's contention that Hawaiian-speaking surveyors are treated differently from non-Hawaiian-speaking surveyors is simply unsupportable. Based on the facts before it, the court finds no evidence of a language classification sufficient to trigger heightened scrutiny for equal protection purposes. *See Nordlinger v. Hahn*, — U.S. —, —, 112 S.Ct. 2326, 2332, 120 L.Ed.2d 1 (1992) ("unless a classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest [ ]").

Pursuant to the rational basis test, the court finds that the testing of key Hawaiian survey terms is rationally related to Hawaii's interest in protecting the public from incompetent surveyors. Each state, pursuant to its police power, has a legitimate interest in regulating the professionals which practice within its borders, in order to insure that the

public receives at least minimally competent services from these practitioners.[15] In particular, land surveyors must demonstrate a level of familiarity with practical terms which are important to understanding and interpreting documents relating to land ownership and conveyances. Where, due to Hawaii's unique history, many of these significant terms are in Hawaiian, a surveyor's understanding of the practice must include knowledge of those terms.[16] There clearly exists a rational connection between Hawaii's testing an applicant's knowledge of all areas relevant to surveying, including relevant Hawaiian terms, and Hawaii's interest in protecting the public from surveyors who are ignorant of important terminology and concepts.

Plaintiff also alleges that the test discriminates against out-of-staters, because in-staters have increased access to information about the test. The court, and the defendants, agree that intentional discrimination against out-of-staters is impermissible. *Metropolitan Life Insurance Co. v. Ward*, 470 U.S. 869, 105 S.Ct. 1676, 84 L.Ed.2d 751 (1975) (unconstitutional tax discrimination against out-of-state insurance companies and in favor of in-state companies); *Zobel v. Williams*, 457 U.S. 55, 102 S.Ct. 2309, 72 L.Ed.2d 672 (1982) (unconstitutional favoritism in Alaska state dividend distributions to residents based on length of residency in the state); *Williams v. Vermont*, 472 U.S. 14, 105 S.Ct. 2465, 86 L.Ed.2d 11 (1985) (unconstitutional use tax credit in favor of residents of state at time of payment regarding autos purchased out-of-state). Here, however,

---

**14.** See note 12 for Supreme Court's discussion of language classifications as pretexts for race discrimination.

**15.** *See Schware v. Bd. of Bar Exam. of State of N.M.*, 353 U.S. 232, 239, 77 S.Ct. 752, 756, 1 L.Ed.2d 796 (1957) ("A State can require high standards of qualification, such as good moral character or proficiency in its law, before it admits an applicant to its bar").

**16.** Plaintiff contends that surveyors are not translators, and can seek translation services from others when necessary. This argument ignores the numerous declarations submitted by defendants which indicate that, for surveyors in Hawaii, on-the-spot translations are frequently necessary.

Plaintiff also argues that, since lawyers and real estate agents in Hawaii need not demonstrate knowledge of Hawaiian land terms in order to be licensed, it should be unnecessary for surveyors to do so. While plaintiff's assertion may be true, the fact that other professions provide more lenient licensing requirements does not prove that the requirements adopted by the Board of Professional Engineers, et al., to regulate surveyors are unreasonable. Additionally, Hawaii has not asserted an interest in requiring these professionals to be familiar with Hawaiian land terms, and there is no evidence that lawyers or real estate agents face on-the-spot translations in the same manner as surveyors.

plaintiff has failed to demonstrate that Hawaii's surveyor's test favors residents over non-residents. Residents of all fifty states have the opportunity to take the surveyor's exam, and all exams are graded anonymously. All applicants receive the same information regarding the test and its requirements beforehand, and identical questions on the day of the exam. To the extent that certain candidates may have obtained greater knowledge of the Hawaiian system and language through study, diligence, friends, or contacts in no way indicates that the State of Hawaii or its representatives provide this information only to in-state residents. An in-state resident is not "unfairly" advantaged by the State because she may have easier access to information about the Hawaiian system any more than a candidate for a state's Bar exam is "unfairly" advantaged by having attended law school in that state.

Plaintiff also appears to argue that the Board's surveyor's test has a disparate, discriminatory impact on non-native Hawaiians and/or on out-of-staters. The Supreme Court has made clear that, in order to prove a claim of discriminatory impact, a plaintiff must establish not only the program's disparate impact but also the defendant's discriminatory purpose. *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979). As set forth above, plaintiff has failed to adduce any facts indicating that the State of Hawaii or any of its employees acted with an intent to discriminate against non-native Hawaiians or residents of other states. With respect to the impact felt by non-native Hawaiians, there is no evidence that native Hawaiian speakers have higher pass rates than those who speak little or no Hawaiian. As to in-state v. out-of-state impact, test results from 1990–1992 indicate that out-of-staters had equal if not higher pass rates than in-staters on Part III of the exam, demonstrating that place of residence has no impact whatsoever on a candidate's ability to pass the test. For these reasons, plaintiff's disparate impact theories must fail.

The court grants defendants summary judgment as to the plaintiff's equal protection claims.

### (2) Due Process

■ To determine whether a governmental deprivation implicates the requirements of due process, "we must look to see if the interest is within the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents v. Roth*, 408 U.S. 564, 571, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972). The court must then assess whether defendants violated the due process due those interests. *Wilkerson v. Johnson*, 699 F.2d 325, 328 (6th Cir.1983).

### (a) Protected Interest

In considering property interests, the court must determine whether "State law or any other source confers an expectation of entitlement to ... licensing that would give rise to a property interest[.]" *Kraft v. Jacka*, 872 F.2d 862, 866 (9th Cir.1989). Other courts, in assessing whether an entitlement to a license exists, have distinguished between holders of a license seeking renewal (or challenging suspension) and first-time applicants. The Ninth Circuit has clearly held that "a first-time applicant has no protected property interest in a new ... license[.]" *Kraft*, 872 F.2d at 866–67 (*citing Jacobson v. Hannifin*, 627 F.2d 177, 179 (9th Cir.1980)). Plaintiff himself cites a case which recognizes that suspension of a *previously issued* license may affect the interests of a licensee who has come to rely on continued possession of the license in order to pursue his livelihood. *Bell v. Burson*, 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971).

Plaintiff has cited no authority, and the court can discern none, suggesting that Hawaii case law or statutes confer upon a first-time applicant for a survey license an expectation of entitlement to that license. As a new applicant, plaintiff could not have grown to rely on the Hawaii surveyor's license in pursuing his livelihood. Moreover, no applicant can be given a surveyor's license until he or she successfully completes all four portions of the surveyor's exam. While a first-time applicant has a right to be tested fairly and impartially,[17] he has no entitlement to

---

17. Any applicant can contest the fairness of the

exam in an administrative proceeding before an

the license prior to passing the exam. Plaintiff can thus have no protected property interest in the Hawaii surveyor's license until he passes Parts III and IV.

With respect to liberty interests, plaintiff correctly argues that he has a liberty interest in pursuing his chosen profession. *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923). The liberty interest in pursuing a career is most commonly found in cases where allegations of moral turpitude, poor work attitude, or incompetence have affected a person's ability to retain work. *See, e.g., Portman v. County of Santa Clara,* 995 F.2d 898 (9th Cir.1993); *Roley v. Pierce County Fire Protection District No. 4,* 869 F.2d 491 (9th Cir.1989); *Wheaton v. Webb–Petett,* 931 F.2d 613 (9th Cir.1991); *Bollow v. Federal Reserve Bank of San Francisco,* 650 F.2d 1093 (9th Cir.1981), *cert. denied,* 455 U.S. 948, 102 S.Ct. 1449, 71 L.Ed.2d 662 (1982). However, due process violations may also be found in arbitrary or malicious actions of state officials who seek to interfere with plaintiff's pursuit of her profession. *Wilkerson,* 699 F.2d at 328.

### (b) Violation of Due Process

Plaintiff contends that the testing of Hawaiian terms, and the lack of notice thereof, constitutes a violation of a protected liberty [18] interest without due process. Plaintiff argues extensively that he was given no notice of the Hawaiian translation portion of the exam, in violation of the Board's responsibility to provide information about the test to applicants requesting it. *See* Hawaii Administrative Rules § 16–82–46. The Board, by enacting this licensing scheme and then providing him with insufficient notice of its requirements, allegedly violated plaintiff's liberty interest in pursuing his occupation.

The Supreme Court has discussed a number of considerations in cases concerning governmental interference with freedom to pursue an occupation. *Hampton v. Mow Sung Wong,* 426 U.S. 88, 96 S.Ct. 1895, 48

L.Ed.2d 495 (1976). The *Hampton* Court specifically addressed the nature and seriousness of the infringement and the strength of the justifications given as key indicators of due process violations. *Wilkerson,* 699 F.2d at 328 (*citing Hampton,* 426 U.S. 88, 96 S.Ct. 1895). In *Wilkerson,* the court did not find that the established licensing scheme, in and of itself, violated plaintiffs' liberty interest in pursuing an occupation. Rather, the Sixth Circuit applied the *Hampton* factors to find that state officials had violated plaintiffs' liberty interests by circumventing the licensing scheme, harassing them with non-existent special licensing requirements, and unnecessarily causing them to delay the opening of their barbershop.

Plaintiff cannot pursue the surveying profession in Hawaii without first receiving a license to do so; hence, Hawaii's licensing scheme is an undisputed obstacle to plaintiff's career as surveyor in Hawaii. However, as discussed above, Hawaii must regulate and license its surveyors to protect the public from incompetent practitioners. The need to assure the public of competent surveyors clearly outweighs plaintiff's interest in pursuing his profession, unregulated, in Hawaii. Thus, the licensing scheme itself does not violate plaintiff's liberty interest.

More importantly, there is no evidence that the State arbitrarily and capriciously denied plaintiff either his license or notice of the Hawaiian term translations.[19] He simply failed to pass two independent portions of the exam which all potential surveyors must pass in order to receive a license to practice. The Board sent to the plaintiff its standard information sheet regarding the test, which included the address and phone number of the ACSM in case plaintiff desired more information about the Hawaiian Land Matters section. No law or regulation requires the Board to reveal to any applicant the *contents* of the exam. While it is unfortunate that the

---

impartial decisionmaker. *See* text at 28–29. The ability and authority to contest the exam does not, however, confer upon a first-time applicant the right to expect a license. It confers only the right to expect a fair exam.

**18.** Plaintiff also argues that the licensing scheme and lack of notice violate his property interest. The court has already found that plaintiff has no protected property interest because he is a first-time applicant.

**19.** *Cf. Wilkerson,* 699 F.2d at 328.

plaintiff was unable to contact the ACSM prior to the test, there is no evidence that Board neglected its duties in giving to the plaintiff the same information available to all candidates regarding the exam.[20]

Finally, the state has not deprived plaintiff of notice and an opportunity to be heard regarding his complaints. "The hallmarks of the protection afforded by the due process clause are notice and an opportunity to be heard at a meaningful time and in a meaningful way." *Brady v. Gebbie*, 859 F.2d 1543, 1554 (9th Cir.1988), *cert. denied*, 489 U.S. 1100, 109 S.Ct. 1577, 103 L.Ed.2d 943 (1989). Plaintiff is free to argue in an administrative hearing that, for instance, the Board violated the state administrative rule concerning information dissemination. Denial of a license gives an applicant the right to a fully adversarial, evidentiary contested case hearing before a disinterested hearings officer, and the right to further appeal to the circuit and appellate courts of the State of Hawaii. Hawaii Administrative Rules, chapter 16–201, subchapters 1 and 2; Hawaii Revised Statutes §§ 91–14, 91–15. That plaintiff did not elect to have an administrative hearing does not constitute a denial of procedural due process by the State.

Accordingly, the court grants defendants summary judgment on the plaintiff's procedural due process claims.

■ Scrutiny for substantive due process violations under the Fourteenth Amendment is essentially equivalent to scrutiny for equal protection analysis: unless the plaintiff can prove that heightened scrutiny is required, the state law need only bear some rational relation to a legitimate state interest. *Lock-*

*ary v. Kayfetz*, 917 F.2d 1150, 1155 (9th Cir.1990).

The court has already determined that no heightened scrutiny is required and that the testing of relevant Hawaiian terms on a portion of the exam is rationally related to Hawaii's interest in licensing only competent surveyors. Additionally, the court finds no evidence that the notice provided to applicants regarding the exam is so deficient as to render irrational the fit between the interest and the testing of Hawaiian terms.[21] The standard information sheet advises applicants that they must be familiar with "the professional skills and knowledge necessary for Land Surveying in the State of Hawaii" in order to pass the exam. The standard form does not, and is not required to, detail which specific skills or areas of knowledge will be tested on a given exam, as applicants are reasonably expected to prepare and study all relevant areas on their own. An applicant who studies the skills and knowledge necessary for land surveying in Hawaii will certainly encounter the terms tested in Part III of the exam.[22] In fact, the test results from 1990–1992 indicate that more candidates passed Part III of the exam than any other portion, thereby indicating that lack of notice as to the contents of Part III does not present the obstacle to licensing which plaintiff contends it does. Consequently, the court grants defendants summary judgment on plaintiff's substantive due process claims.

### CONCLUSION

For the reasons stated above, the court grants defendants summary judgment on all

**20.** Plaintiff also argues that Hawaiian residents are more likely than non-Hawaiian residents to learn of the Hawaiian term translations, thereby rendering the notice to non-Hawaiian residents defective. The court has already addressed this argument, finding that information gained informally by applicants from sources other than the official state agencies has no bearing on the state's constitutional obligations. The court has also previously determined that, if the standard information sheet is deficient, it would be deficient as to all candidates, and that plaintiff needs to address this alleged deficiency in a state administrative procedure.

**21.** The court incorporates its earlier discussion regarding the alleged defectiveness of the information and the pursuit of state administrative remedies.

**22.** Plaintiff has not indicated to this court that he studied for this exam in any fashion whatsoever, despite the Board's warning that he would be tested on skills and knowledge necessary to survey practice in Hawaii. It appears that he simply assumed that survey practice in Hawaii would be identical to that in Alaska and Washington.

of the plaintiff's claims, and denies plaintiff summary judgment.

IT IS SO ORDERED.