**Remo BENIGNI, dba The Silver Fox,**
**Plaintiff–Appellee,**

v.

**CITY OF HEMET; Roger Miller; Jesse**
**Pease; Scott Jernigan,**
**Defendants–Appellants.**

No. 87–5622.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 7, 1988.

Decided Aug. 15, 1988.

As Amended Feb. 14, 1989.

As Amended June 15, 1989.

2

—

Christopher Lockwood, Mac Lachlan, Burford & Arias, San Bernardino, Cal., for defendants-appellants.

Michael J. Cisarik, Santa Ana, Cal., for plaintiff-appellee.

Before TANG, BOOCHEVER and NORRIS, Circuit Judges.

TANG, Circuit Judge:

The City of Hemet and individual police officers appeal a jury verdict for Benigni in his section 1983 suit alleging that police officers harassed his business to such an extent that he was finally forced to sell it at a loss. We affirm.

## BACKGROUND

Benigni opened the Silver Fox Restaurant and Bar in November 1983. He filed suit on December 7, 1984, alleging that Hemet police officers constantly harassed his business and customers by: (1) performing bar checks on a daily basis; (2) following customers leaving the Silver Fox and occasionally arresting them for drunk driving and other violations; (3) issuing parking tickets to staff and customers; (4) parking across the street and "staking out" his customers, employees and family members; (5) stopping cars for traffic violations in the vicinity of the Silver Fox after "herding" or "red lighting" them into that area; and (6) investigating an alleged bomb threat on December 8, 1984, the day after Benigni filed suit. Benigni claimed the officers made five or six bar checks a night inside the business and that they shined

flashlights in customers' faces, checked identifications of people obviously over 21, and searched drawers behind the bar. Benigni contends this harassment eventually forced him to sell at a loss in March 1986.

Benigni's section 1983 suit alleged violations of his first amendment right of association, his fourth amendment right against unreasonable search and seizure, and his fourteenth amendment rights to due process and equal protection. A jury awarded Benigni compensatory damages of $285,000 against the City, compensatory damages of $7,500 and punitive damages of $7,500 against Chief of Police Roger Miller, and compensatory damages of $2,500 and punitive damages of $3,000 against police officer Jesse Pease. The jury found in favor of officer Jernigan and he appeals the district court's denial of attorney fees. The City argues that the verdict is not supported by substantial evidence and that the case was improperly submitted to the jury on non-applicable legal theories.

## DISCUSSION

### I. THEORIES OF LIABILITY

■ As a preliminary matter we must consider whether the City has preserved its legal challenges for review on this appeal. The City has not met the requirement of Fed.R.Civ.P. 51, which says "[n]o party may assign as error the giving or the failure to give an instruction unless he objects thereto, before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." This court has held that Rule 51 is satisfied even where the plaintiff does not object to instructions when plaintiff proposes alternative instructions and the district court is aware that plaintiff does not agree with the court's instructions. *Martinelli v. City of Beaumont*, 820 F.2d 1491, 1493–94 (9th Cir.1987); *Brown v. Avemco Investment Corp.*, 603 F.2d 1367, 1371 (9th Cir.1979).

In this case the City proposed alternative jury instructions but the record indicates that the trial court was not made aware of any specific concern with the proposed in-

structions. *See Martinelli*, 820 F.2d at 1493; *Robert's Waikiki U-Drive v. Budget Rent-A-Car*, 732 F.2d 1403, 1410 (9th Cir. 1984). No specific objection or argument focused the issue before the court or gave it an opportunity to modify the instruction to incorporate the elements of the City's proposed instructions. *See Budget Rent-A-Car*, 732 F.2d at 1410. The purpose of Rule 51 is to give the trial court the opportunity to correct potential error, *id.*, and the trial court had no such opportunity here. Thus we do not agree with the City that this is a situation in which we should review instructions in the absence of a clear objection.

■ The Supreme Court's recent decision in *City of St. Louis v. Praprotnik*, 485 U.S. 112, 108 S.Ct. 915, 922, 99 L.Ed.2d 107 (1988), does not mandate a different result. In *Praprotnik* the Court held that in a section 1983 case legal issues are preserved for review even in the absence of objection to jury instructions when the petitioner has moved for summary judgment and directed verdict, advancing the same legal argument being advocated in the reviewing court. *Id.* In this case, the appellants moved for summary judgment, the individual appellants moved for a directed verdict on the ground of their asserted immunity, and all appellants moved for judgment NOV or for new trial. The memoranda in support of these motions did not question the district court's proposed jury instructions, nor did they specifically mention the issue of jury instructions at all. Except for the issue of qualified immunity, discussed below, these motions are not sufficient to raise objection to the jury instructions or to preserve any objections for review on appeal. Thus we will not address the adequacy of the district court's instructions.

## II. SUFFICIENCY OF THE EVIDENCE

We will consider whether there is evidence supporting the verdict sufficient to justify submitting the various theories of liability to the jury. First, we note that our review is "extraordinarily deferential" because of the City's failure to move for a directed verdict on the liability issues at the close of all the evidence.[1] *Herrington v. Sonoma County*, 834 F.2d 1488, 1501 (9th Cir.1987). "It is thoroughly established that the sufficiency of the evidence is not reviewable on appeal unless a motion for a directed verdict was made in trial court." *United States v. 33.5 Acres of Land*, 789 F.2d 1396, 1400 (9th Cir.1986) (quoting *Trans World Airlines, Inc. v. Shirley*, 295 F.2d 678, 678–79 (9th Cir.1961)); C. Wright & A. Miller, 9 *Federal Practice and Procedure* § 2536 at 593 (1971).

Because the City is precluded from challenging the sufficiency of the evidence, our " 'inquiry is limited to whether there was any evidence to support the jury's verdict, irrespective of its sufficiency, or whether plain error was committed which, if not noticed, would result in a "manifest miscarriage of justice." ' " *Herrington*, 834 F.2d at 1500 (quoting *Shipman v. Central Gulf Lines, Inc.*, 709 F.2d 383, 386 (5th Cir.1983) (quoting *Coughlin v. Capitol Cement Co.*, 571 F.2d 290, 297 (5th Cir.1978))). We review liability findings to determine whether there is an absolute lack of evidence supporting the verdict. *Id.*

### (1) First Amendment Claim

■ Benigni claims that the City violated his first amendment right of association because the police harassment interfered with his family relations and also because it discouraged friends and patrons from frequenting the Silver Fox, thereby interfering with his social relations. In *Roberts v. United States Jaycees*, 468 U.S. 609, 617–618, 104 S.Ct. 3244, 3249–3250, 82 L.Ed.2d 462 (1984), the Supreme Court reiterated that its cases have protected associational freedom in two distinct senses: (1) holding that choices to enter into and maintain certain "intimate human relationships" must be secured against undue intrusion; and (2) holding that the right to associate

---

**1.** The motion for directed verdict only asserted the qualified immunity of the individual appel-   lants.

for the purpose of engaging in those expressive activities protected by the First Amendment (e.g., speech, assembly, petition for the redress of grievances, exercise of religion) must be protected.

On April 3, 1989, over two years after the trial in the instant case, the Supreme Court filed its decision in *City of Dallas v. Stanglin,* —— U.S. ——, 109 S.Ct. 1591, 104 L.Ed.2d 18 (1989). In *Stanglin,* the Court ruled that the activity of dance-hall patrons—coming together to engage in recreational dancing—is not protected by the First Amendment. *Id.* 109 S.Ct. at 1595. The Court first reasoned that the patrons are not engaged in the sort of "intimate human relationships" referred to in *Roberts. Id.* Second, the Court also noted that there are no expressive forms of association at stake that would fall under the protections of the First Amendment since "[t]here is no suggestion that these patrons 'take positions on public questions,' or perform any of the other similar activities described in *Board of Directors of Rotary Int'l v. Rotary Club of Duarte,* 481 U.S. 537, 548, 107 S.Ct. 1940, 1947, 95 L.Ed.2d 474 (1987)." *Id.*

The *Stanglin* case places the validity of Benigni's first amendment claims into serious doubt, but we do not reach the specific issue of whether *Stanglin* precludes Benigni's claims. First, the City did not specifically object to the first amendment jury instructions, *Martinelli v. City of Beaumont,* 820 F.2d 1491, 1493–94 (9th Cir. 1987), and did not properly preserve this issue on appeal. *Litchfield v. Spielberg,* 736 F.2d 1352 (1984), *cert. denied,* 470 U.S. 1052, 105 S.Ct. 1753, 84 L.Ed.2d 817 (1985). Second, the City similarly invited error by proposing the alternative jury instruction below which also seems to run afoul of *Stanglin:*

> On the first amendment claim, you must find that the actions of defendants (a) significantly interfered with plaintiff's ability to freely associate with the customers of The Silver Fox for social purposes, or (b) significantly interfered with the ability of the customers of The Silver Fox to freely associate with each other for social purposes.

Thus, even if Benigni's first amendment claims are invalid under current Supreme Court precedent, the City's challenge to the claims on appeal was not properly presented to the trial court nor preserved for appeal and we decline to rule on the challenge.

### (2) Fourth Amendment Claim

■ The court instructed the jury that there is a "constitutional right not to be subjected to unlawful search or seizure." The court also read the text of Cal. Bus. & Prof.Code § 25755, which authorizes inspection of premises where alcoholic beverages are sold.

The evidence presented at trial indicates that police officers checked the Silver Fox as often as five or six times per evening, that officers went behind the bar, searched in drawers, shined flashlights in patrons' faces, requested identification of persons obviously over 21, and walked through the bar with their hands on their guns. The verdict for the plaintiff reflects a determination that the bar checks in this case were unreasonable because of the manner in which they were performed and their frequency. Clearly this theory of liability was correctly submitted to the jury, and there is evidence to support the verdict.

### (3) Equal Protection Claim

■ An equal protection claim based on selective law enforcement activities is judged according to ordinary standards and the plaintiff must show both a discriminatory effect and a discriminatory motivation. *Wayte v. United States,* 470 U.S. 598, 608, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547 (1985). The City argues that it was plain error for the equal protection issue to have gone to the jury. Elements of an intentional discrimination claim are present in this case because the evidence tends to show the discriminatory effect of greater law enforcement activity at the Silver Fox than at other bars, and the discriminatory intent of singling out Benigni based on his Italian ancestry. *See Saint Francis College v. Al-Khazraji,* 481 U.S. 604, 609–612, 107 S.Ct. 2022, 2026–2028, 95 L.Ed.2d 582

(1987) (targets of race discrimination for purposes of section 1981 include groups that today are considered merely different ethnic or national groups, such as Arabs, Jews, Germans and Italians).

The evidence in this case on discrimination because of Benigni's Italian ancestry is admittedly thin.[2] The City, however, although submitting a requested instruction on equal protection, did not object to the court's instruction submitting that issue. However, we need not rule directly on the equal protection claim since the general verdict in this case is sustainable under the standards enunciated in *Traver v. Meshriy*, 627 F.2d 934, 938–39 (9th Cir.1980). In *Traver*, we held that given a general jury verdict in a case presenting several theories of recovery, one of which is challenged on appeal as lacking substantial evidence or being erroneous as a matter of law, a reviewing court has the discretion to attribute the verdict to another theory if it was properly submitted to the jury. In the instant case, Benigni's due process theory was clearly supported by evidence and is legally correct. Furthermore, the due process and equal protection theories in this case are practically identical, both being grounded on the allegation of arbitrary law enforcement activity for the purpose of harassment and interference.

### (4) Due Process Claim

■ The due process clause protects a liberty or property interest in pursuing the "common occupations or professions of life." *Schware v. Board of Bar Examiners*, 353 U.S. 232, 238–39, 77 S.Ct. 752, 755–56, 1 L.Ed.2d 796 (1957); *Chalmers v. City of Los Angeles*, 762 F.2d 753, 757 (9th Cir.1985). On appeal the City argues that due process only applies when a plaintiff asserts infringement of a constitutional right or of a property right created by

state law and that this case does not involve the sort of property right that, for example, a tenured teacher might enjoy. *See, e.g., Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (non-tenured teacher has no right to procedural due process). This argument misses the point that the constitutional right infringed in this case is the right to pursue an occupation. This claim was properly submitted to the jury.

As we have already noted, the evidence before the jury was sufficient to support a conclusion that excessive and unreasonable police conduct was intentionally directed toward Benigni's bar to force him out of business. The testimony reveals that bar checks occurred nightly, up to five or six times per night, that customers were frequently followed from the Silver Fox and sometimes arrested, that staff and customers frequently received parking tickets, that officers parked at the old train depot across the street, and that there were usually three or four officers there at all times in the evening, and that cars were often stopped in the vicinity of the Silver Fox for traffic violations that had occurred elsewhere.

### III. QUALIFIED IMMUNITY

■ This question is properly before the court because the individual defendants moved for a directed verdict on the basis of qualified immunity and subsequently offered it as a ground for judgment NOV. In reviewing jury instructions to which objections have been made, this court determines "whether, viewing the jury instructions as a whole, the trial judge gave adequate instructions on each element of the case to ensure that the jury fully understood the issues." *Los Angeles Memorial Coliseum Comm'n v. National Football*

---

2. At trial, references were made to Benigni allegedly being associated with the Mafia and with organized crime. These are of record. In addition, Benigni argues in his response to the petition for rehearing that the jury also had other non-verbal cues which clearly indicated that Benigni was Italian. Benigni claims, for example, to have exhibited a heavy Italian accent while testifying as well as displaying stereo-

typical Italian appearance, mannerisms, and demeanor. *Benigni's Response to Petition for Rehearing* at 5 n. 1. These non-verbal cues are not formally a part of the trial record, although they would constitute potentially important information for the jury. But because this information is not formally before us, we do not rely upon these factors in this appeal.

*League,* 726 F.2d 1381, 1398 (9th Cir.), *cert. denied,* 469 U.S. 990, 105 S.Ct. 397, 83 L.Ed.2d 331 (1984). The trial court has broad discretion in formulating instructions and will be reversed only upon a showing of an abuse of discretion. *United States v. Wellington,* 754 F.2d 1457, 1463 (9th Cir.), *cert. denied,* 474 U.S. 1032, 106 S.Ct. 592, 88 L.Ed.2d 573 (1985). A failure to submit a proper jury instruction is a question of law reviewable de novo, *999 v. C.I.T. Corp.,* 776 F.2d 866, 871 (9th Cir.1985), but an error in instructing the jury in a civil case does not require reversal if it is more probably than not harmless, *Coursen v. A.H. Robbins Co.,* 764 F.2d 1329, 1337 (9th Cir. 1985).

Although the district court refused to grant a directed verdict or summary judgment for defendants Pease and Miller based on their claim of qualified immunity, it did instruct the jury on the defense as follows:

> In addition to denying that they deprived plaintiff of any constitutional or statutory right the defendant police officers assert a defense which is based on qualified immunity from liability that public officers, such as law enforcement officers, enjoy if they are acting in compliance with applicable law.
>
> In order for the individual defendants to establish their claim or defense of good faith, each defendant must prove by a preponderance of the evidence the following:
>
> 1. At the time he acted the law upon which he acted was not clearly established and that he could not reasonably be expected to know that his conduct was unlawful;
>
> 2. If the law was clearly established at the time he acted, he must prove that he neither knew nor should have known of the relevant legal standard.

To explain the "relevant legal standard" the court then read the California statute authorizing inspections of bars. The City offered an instruction the court rejected, which stated:

> Even if you should find that Roger Miller, Jesse Pease, and Scott Jernigan did each of the acts I have just referred to, you must enter a verdict in their favor if you find that at the time they were acting in good faith. It is the plaintiff's burden to prove that they were not acting in good faith, that is, that their conduct violated clearly established federal statutory or constitutional rights of which a reasonable person in their position would have known.

■ The argument here centers on who has the burden of proof on the immunity defense. It is clear that qualified immunity is an affirmative defense, *Harlow v. Fitzgerald,* 457 U.S. 800, 815, 102 S.Ct. 2727, 2736, 73 L.Ed.2d 396 (1982), and we think it equally clear that the burden of proving the defense lies with the official asserting it, *id.* at 819, 102 S.Ct. at 2738. We have expressly held that good faith is an affirmative defense that a police officer must prove. *Heller v. Bushey,* 759 F.2d 1371, 1373–74 n. 1 (9th Cir.1985), *vacated on other grounds,* 475 U.S. 796, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986); *Harris v. City of Roseburg,* 664 F.2d 1121, 1129 (9th Cir. 1981) (we recognize that good faith is an affirmative defense which must be proved by the officer).

A number of other circuits have reached the same conclusion, reading *Harlow* to say that because qualified immunity is an affirmative defense the burden of proving it lies with the defendant just as the burden of pleading the defense lies on the defendant, *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). *See, e.g., Kompare v. Stein,* 801 F.2d 883, 886 (7th Cir.1986); *Tanner v. Hardy,* 764 F.2d 1024, 1027 (4th Cir.1985); *Arebaugh v. Dalton,* 730 F.2d 970 (4th Cir.1984); *Bauer v. Norris,* 713 F.2d 408, 411 n. 6 (8th Cir. 1983); *Alexander v. Alexander,* 706 F.2d 751 (6th Cir.1983); *but see, Zeigler v. Jackson,* 716 F.2d 847 (11th Cir.1983) (per curiam) (once a defendant establishes his good faith, the burden shifts to the plaintiff to show lack of good faith); *Saldana v. Garza,* 684 F.2d 1159, 1163 (5th Cir.) (same), *cert. denied,* 460 U.S. 1012, 103 S.Ct. 1253, 75 L.Ed.2d 481 (1982).

We are unimpressed by the criticism of the burden of proof rule advanced in *Payne v. Humboldt County*, 655 F.Supp. 1341, 1343 (N.D.Cal.1987), and we reject the appellants' suggestion that we should reconsider our prior decisions.

■ The defect in the district court's instruction in this case is not the burden of proof but the failure to explain that what the defendants must prove is that their conduct was reasonable under the applicable standards even though it might have violated the plaintiff's constitutional rights. *Capoeman v. Reed*, 754 F.2d 1512, 1513 (9th Cir.1985) (quoting *Davis v. Scherer*, 468 U.S. 183, 190, 104 S.Ct. 3012, 3017, 82 L.Ed.2d 139 (1984)); *see also Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."). There is no prejudice from failure to give this instruction because the award of punitive damages against Pease and Miller indicates that the jury found their conduct to have been "in reckless or callous disregard of, or indifference to, the rights of the plaintiff," and thus the jury would have found their conduct unreasonable under the applicable standards. The failure to give a proper instruction did not prejudice the defendants because the evidence would have supported a verdict for the plaintiff even with that instruction. *See Kisor v. Johns–Manville Corp.*, 783 F.2d 1337, 1340 (9th Cir.1986) (the appellate court must consider "whether the instruction is misleading or states the law incorrectly to the prejudice of the objecting party"). Thus we conclude that any error in the qualified immunity instruction was harmless.

■ In considering the sufficiency of the evidence on this question, our standard of review is whether the jury verdict is supported by substantial evidence, that is, such relevant evidence as reasonable minds might accept as adequate to support a conclusion. *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1013–14 (9th Cir.1985), *cert. denied*, 474 U.S. 1059, 106 S.Ct. 802, 88 L.Ed.2d 778 (1986).

The credibility of witnesses and the weight of the evidence are issues for the jury and are generally not subject to appellate review. *Id.* at 1024. A review of the record convinces us that there was sufficient evidence to support the jury's rejection of the good faith defense.

## IV. DAMAGES

■ This court does not disturb an award of damages on appeal unless it is clearly unsupported by the evidence or is "grossly excessive, monstrous, or shocking to the conscience." *Chalmers*, 762 F.2d at 760. We conclude that the evidence supports the award, and we do not find the award excessive.

## V. ATTORNEY FEES

■ Attorney fees awards in a civil rights case under 42 U.S.C. § 1988 are reviewed for an abuse of discretion. *Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983); *Hardin v. White Mountain Apache Tribe*, 779 F.2d 476, 480 (9th Cir.1985).

■ The City argues that the court should not have awarded Benigni's counsel $94,920 because the court did not do a sufficiently detailed analysis. The district court noted that Benigni's attorney provided detailed documentation and that the time spent was reasonable. There was no abuse of discretion.

■ The City also argues that Jernigan should have received attorney fees because the jury did not find him liable for the violations of Benigni's rights. The district court held that a defendant cannot obtain attorney fees unless the unsuccessful claim was frivolous, vexatious, or brought to harass or embarrass the defendant, *Hensley*, 461 U.S. at 429 n. 2 & 435 n. 10, 103 S.Ct. at 1937 n. 2 & 1940 n. 10, and that no such basis existed in this case. We agree. The City argues that Benigni "did not bother to present a case against defendant Jernigan" and thus he was named as a defendant for frivolous or vexatious reasons. This contention is without merit.

Benigni elicited testimony that Jernigan had been in the Silver Fox on eighteen occasions to conduct bar checks, that he stopped a number of motorists and pedestrians outside the restaurant, that he issued several citations to motorists driving in front of the restaurant, and that after a Silver Fox employee took a photograph of him inside the bar he vowed to the officer with him that he would get the employee. Although the jury did not find Jernigan liable for the violation of Benigni's constitutional rights, it is clear that Benigni attempted to build a case against him. Jernigan is thus not entitled to fees under *Hensley*.

The judgment of the district court is AFFIRMED.