FILED
COURT OF APPEALS
DIVISION II

2014 DEC 30 AM 9: 48

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| CLUB LEVEL, INC., and RYAN FILA, a single man, | No. 45270-7-II |
| Appellants, | UNPUBLISHED OPINION |
| v. | |
| WASHINGTON STATE LIQUOR CONTROL BOARD; PAT KOHLER, in her individual capacity as Executive Director of the Washington State Liquor Control Board; SHARON FOSTER, in her individual capacity as a member of the Washington State Liquor Control Board; RUTHANN KUROSE, in her individual capacity as a member of the Washington State Liquor Control Board; CHRIS MARR, in his individual capacity as a member of the Washington State Liquor Control Board; SERGEANT TOM STENSATTER, in his individual capacity as a Sergeant employed by the Washington State Liquor Control Board; and MATT MURPHY, in his individual capacity as an officer employed by the Washington State Liquor Control Board, | |
| Respondents. | |

BJORGEN, A.C.J. — Ryan Fila and Club Level Inc. (collectively, Fila) appeal from the

trial court's dismissal on summary judgment of Fila's suit against the Washington State Liquor

Control Board (WSLCB) and certain of its employees. In his suit Fila challenged enforcement

actions taken by WSLCB employees involving Fila's nightclub, Club Level, claiming violation of his right to due process, negligent supervision, civil conspiracy, and tortious interference with a business expectancy. Fila argues on appeal that the trial court erred in granting summary judgment to the WSLCB because (1) the right to pursue the occupation of nightclub owner free from excessive police interference is clearly established under federal law, such that qualified immunity does not bar his cause of action under 42 U.S.C. section 1983; (2) his negligent supervision claim against the WSLCB is not redundant of his other claims; and (3) he submitted sufficient evidence to create a material issue of fact as to his claims of civil conspiracy and tortious interference with a business expectancy. We affirm the trial court.

## FACTS

The parties' characterizations of the record differ in some respects. Because the trial court dismissed Fila's claims on the WSLCB's motion for summary judgment, we present the facts in the light most favorable to Fila, the nonmoving party.

### FACTUAL BACKGROUND

Fila opened Club Level in August 2010, on the second floor of a downtown Wenatchee building owned by Arturo Rodriguez. Rodriguez operated a nightclub in the same building known as "Volcano" or "El Volcan," where Fila had served as bar manager. Clerk's Papers (CP) at 139-40.

Club Level quickly attracted the attention of local law enforcement officials. On January 2, 2011, Officer Kirk Drolet of the Wenatchee Police Department (WPD) sent an e-mail to WSLCB officer Matthew Murphy, stating that WPD officers "are brainstorming how to help Club Level/Volcano from sucking up immense amounts of our time," that Drolet "figure[d] a few expensive tickets [would] slow things down," and requesting "some info from you on things

we can do to help Club Level . . . and Fuel . . . and Sharx."[1] CP at 299. Murphy responded by offering some suggestions for how to write certain citations and stated, "If you write a citation for RCW 66.44.200[, prohibiting alcohol sales to persons apparently under the influence of liquor, p]lease let me know and I will also go and cite the bar and possibly the bartender." CP at 300.

On February 28, WPD Captain Kevin Dresker sent an e-mail to certain WPD officers who had made arrests following a fight at Club Level. Dresker noted that "Club Level is an issue," that WPD officers "had to deal with large and unruly crowds" the previous weekend, and that "[t]his not only presents an officer safety issue but also pulls officers away from other areas of the city." CP at 318.

Murphy requested that his supervisor, Lieutenant Kevin Starkey, designate "El Volcan (Club Level)" as a "location of strategic interest" on March 9, 2011, and Starkey agreed. CP at 284, 286. Under the location of strategic interest program, the WSLCB targeted for increased enforcement action "a small percentage of [liquor] licensees creating a disproportiona[te] threat to the health and safety of communities." CP at 266. Under this program, WSLCB officials cooperated "with any and all law enforcement and regulatory agencies available" to target licensees with

> multiple premises visits, compliance checks using operatives 20 year[s] of age and younger, extended and repeated undercover operations, extended surveillance and any other lawful practice deemed necessary.

CP at 267. WSLCB officials designated locations of strategic interest based on a variety of factors, including observations by liquor enforcement officers or police, complaints, violations,

---

[1] Fuel and Sharx were other Wenatchee nightclubs.

warnings, calls for emergency services, criminal activity, driving under the influence referrals, and input from local authorities and the community.

WSLCB employee Sergeant Tom Stensatter assumed responsibility for liquor enforcement in the downtown Wenatchee area on August 1, 2011. Stensatter issued a citation to Club Level on August 23, based on an incident in which WPD officers responded to a call on Saturday, August 14, and discovered and cited a person under age 21. The WSLCB subsequently issued a formal complaint against Fila based on the citation, alleging that Fila or his employees "allowed a person under twenty-one (21) years of age to enter and remain in an area classified as off-limits." CP at 272.

Fila challenged the citation and obtained a hearing before an administrative law judge (ALJ). At the hearing, Stensatter testified that neither a licensee's constructive knowledge that a minor has entered the premises nor efforts by bar staff to locate and remove the minor upon learning of the minor's presence were relevant to whether the violation had occurred. Stensatter's testimony misstated the relevant legal standard. *See Reeb, Inc. v. Wash. State Liquor Control Bd.*, 24 Wn. App. 349, 353, 600 P.2d 578 (1979) (holding that liability for a violation arises from inaction in the face of "the licensee's actual or constructive knowledge of the circumstances which would foreseeably lead to the prohibited activity").

The ALJ dismissed the complaint against Fila on July 19, 2012. The ALJ concluded that Club Level did not "allow" the minor to remain on the premises because "the Licensee immediately engaged in [a] search [for] the minor upon having knowledge that the minor was present" and "continued its efforts to locate the minor until the minor was located by the law enforcement officers." CP at 106. The WSLCB adopted the ALJ's findings and conclusions on August 28, 2012.

4

Meanwhile, in September 2011, Fila notified the City of Wenatchee of his intent to sue based on the conduct of WPD. Fila filed suit in federal court against the City in February 2012. *Club Level & Ryan Fila v. City of Wenatchee*, U.S.D.C. No. CV-12-00088-EFS.

On April 25, 2012, Stensatter informed Rodriguez by e-mail that, although Rodriguez's license had originally applied to all three floors of the building containing El Volcan, and each floor had separate access from the stairwell, when Fila obtained the Club Level license for the second floor, "it created a separation of [Rodriquez's] licensed premises." CP at 387. The e-mail stated that Rodriguez could no longer serve alcohol at special events on the third floor until he obtained a new license for that floor. Stensatter notified Rodriguez of this new interpretation of the licensing regulations only three days before an event involving alcohol service was scheduled to take place on the third floor. Shortly after this incident, Fila decided to move Club Level to a different location.

Fila's attorney sent the WSLCB's executive director, Pat Kohler, a letter, dated April 25, concerning Stensatter's refusal to allow alcohol service on the third floor of Rodriguez's building. In the letter, Fila's attorney expressed "concern[] that inappropriate and undue influence is being exerted through the enforcement arm of [WSLCB] against Mr. Fila personally and Club Level" based on "personal knowledge that Sgt. Stensatter is a personal friend of Chief Tom Robbins of the WPD." CP at 332. Fila's attorney sent Kohler a second letter, dated May 1, also concerning alcohol service on the third floor. Kohler did not respond to either letter.

On June 1, Fila notified the state's Department of Risk Management of his intent to sue the state and various officials based on the conduct of the WSLCB's employees. On June 11, Fila's attorney sent Kohler a letter designated a "Formal Complaint." CP at 338. The letter described Stensatter's failure to adequately investigate the complaint concerning Club Level

allowing a minor to remain on the premises, his erroneous testimony and inappropriate laughter at the hearing concerning that complaint, and his denial of permission for alcohol service on the third floor of Rodriguez's building. The letter closed by advising Kohler that her "officers in the Chelan County area [were] dragging [her] agency into litigation" and expressing the hope that Kohler would resolve the matter short of litigation. CP at 341.

According to Fila, Stensatter subsequently told him that he "could make the relocation of this business fast, smooth and easy for [Fila] if [Stensatter] was not named in the lawsuit," but that "if he was named in the lawsuit the delay . . . could be as much as 90 days." CP at 438. Stensatter admitted that he talked to Fila about the impending lawsuit on August 4, 2012, but insisted that he merely informed Fila that, were Stensatter named in the suit, he could no longer "assist" Fila because the WSLCB, in order to prevent any conflict of interest, would assign a different officer to Club Level. CP at 183.

On August 17, Fila reopened Club Level in a new location. At 12:45 a.m. on Saturday, August 25, Stensatter conducted a premises check at the new location, demanding to see the identification and alcohol service permits for all Club Level staff, including Fila. Based on this visit, Stensatter issued Fila a citation for "inadequate lighting" on August 29, 2012, the day after the WSLCB adopted the ALJ's findings and conclusions dismissing the prior complaint involving a minor on the premises. CP at 276-77.

Stensatter called WSLCB licensing officials the next morning, informing them of the inadequate lighting citation and pointing out a regulation, WAC 314-07.060(4), authorizing the cancellation of Fila's temporary permit based on the violation. Fila alleged that Stensatter conducted the check at the peak of Friday night service hours as "a deliberate retaliatory act on

his part which he knew [would] have a negative impact" on Fila's business. CP at 437. The WSLCB eventually issued a formal complaint based on the citation.[2]

Fila's attorney sent Kohler a fourth letter, dated August 31, 2012, informing her of Stensatter's conduct regarding the inadequate lighting citation. Kohler did not respond. Kohler later explained that she had initially assigned a captain to look into Fila's complaints "and brought in our HR director into this issue to see if we should investigate," but that "because the tort claim was filed everything was placed on hold." CP at 238-39.

In opposition to WSLCB's summary judgment motion, discussed below, Fila submitted an analysis of WPD incident logs, obtained through discovery, concerning police involvement with various Wenatchee bars from August 2010 through August 2012. The analysis showed that Club Level had 183 incidents involving police, more than twice as many as Fuel, the Wenatchee bar with the second greatest number of such incidents. Of these 183 incidents, Club Level staff or patrons initiated 139 of them by requesting police assistance. Club Level incidents generated 44 police reports, 8 for assaults, compared to 12 reports, including 6 for assaults, resulting from incidents at Fuel. Fila's analysis also revealed that WPD had forwarded 27 reports for Club Level to the WSLCB, compared to only 2 for Fuel and 6 for all other analyzed bars combined.

Fila also submitted an analysis to the superior court showing that WPD officers conducted 160 "walk-throughs" at Club Level during this same period, 16 of which involved more than two officers, compared to 113 walk-throughs at Fuel, only 2 of which involved more than two officers. Other Wenatchee bars analyzed had far fewer walk-throughs, and only one involved more than two officers. Fila also submitted an analysis purporting to show that WPD

---

[2] Fila appealed, but an ALJ affirmed the order.

officers conducted more walk-throughs and forwarded more reports to the WSLCB immediately following certain actions Fila had taken to protect his rights.

## PROCEDURAL HISTORY

Fila filed this lawsuit in Thurston County Superior Court on August 30, 2012. The amended complaint named the WSLCB itself and three of its appointed members in their individual capacities, as well as Kohler, Stensatter, and Murphy. The complaint asserted various causes of action under federal and state law based on due process, equal protection, unreasonable search and seizure, negligent supervision, defamation of character, conspiracy, negligent infliction of emotional distress, outrage, tortious interference with a business expectancy, and the public disclosure act. Fila requested injunctive relief, compensatory and punitive damages, and costs and attorney fees, in part, under 42 U.S.C. section 1983.

The WSLCB moved for summary judgment as to all defendants on all claims, stipulating that Stensatter and Murphy acted within the scope of their employment at all relevant times. The WSLCB argued, among other things, that (1) its commissioners had statutory immunity, (2) the liquor control board itself was not a "person" subject to suit under 42 U.S.C. section 1983, (3) qualified immunity barred the federal claims against other WSLCB employees, and (4) the remaining claims failed because Fila had either failed to state a valid cause of action or failed to allege facts sufficient to support the cause of action asserted.

In response, Fila agreed to voluntarily dismiss the board member defendants and to dismiss all section 1983 claims against the WSLCB itself. Fila also agreed to dismiss all of his claims against individual defendants except for (1) violation of his right to due process, (2) negligent supervision, (3) civil conspiracy, and (4) tortious interference with a business expectancy.

8

The superior court granted in part the WSLCB's summary judgment motion, except as to Fila's due process claim. The WSLCB moved for reconsideration on the due process claim, and while its motion was pending, the United States District Court dismissed Fila's federal suit against the City of Wenatchee, the WPD, and its officers.

The trial court granted the WSLCB's motion for reconsideration, resulting in an order of summary judgment in the defendants' favor on all of Fila's claims. Fila appeals.

## ANALYSIS

After discussing the standard of review for summary judgment, we first address Fila's section 1983 due process claim. We then turn to Fila's state law claims.

### I. STANDARD OF REVIEW

We review a grant of summary judgment de novo, performing the same inquiry as the trial court. *Macias v. Saberhagen Holdings, Inc.*, 175 Wn.2d 402, 407-08, 282 P.3d 1069 (2012); *Torgerson v. One Lincoln Tower, LLC*, 166 Wn.2d 510, 517, 210 P.3d 318 (2009). A court should grant summary judgment only if

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

CR 56(c).

A party moving for summary judgment bears the burden of demonstrating that there is no genuine issue of material fact. *Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990). A material fact is one upon which the outcome of the litigation depends in whole or in part. *Atherton*, 115 Wn.2d at 516. If the moving party satisfies its burden, the nonmoving party must present evidence demonstrating that a material fact remains in dispute. *Atherton*, 115 Wn.2d at 516. "If the nonmoving party fails to

do so, then summary judgment is proper." *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005).

In determining whether summary judgment was proper, we must consider all facts, and the reasonable inferences therefrom, in the light most favorable to the nonmoving party. *Vallandigham*, 154 Wn.2d at 26; *Atherton*, 115 Wn.2d at 516. Under this standard, a trial court properly grants summary judgment only if reasonable persons could reach but one conclusion from all the evidence. *Vallandigham*, 154 Wn.2d at 26. Thus, we consider the record in the light most favorable to Fila.

## II. DUE PROCESS CLAIM UNDER 42 U.S.C. SECTION 1983

Fila bases his due process claim on 42 U.S.C. section 1983, which provides in relevant part that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

To state a cause of action under this provision, "a plaintiff need only allege that (1) defendant acted under color of state law, and (2) defendant's conduct deprived plaintiff of rights protected by the Constitution or laws of the United States." *Sintra, Inc. v. City of Seattle*, 119 Wn.2d 1, 11-12, 829 P.2d 765 (1992). Washington courts have concurrent jurisdiction with the federal courts to hear such claims. *Sintra*, 119 Wn.2d at 11; *Haywood v. Drown*, 556 U.S. 729, 734-35, 129 S. Ct. 2108, 173 L. Ed. 2d 920 (2009).

Fila contends that the trial court erred in dismissing his section 1983 claim against Kohler, Murphy, and Stensatter on summary judgment because the evidence submitted established that these employees, under color of state law, deprived him of the "right to pursue

10

an occupation" guaranteed by the United States' due process clause. Br. of Appellant at 24-34. The qualified immunity from suit enjoyed by law enforcement personnel performing their official duties does not bar his claim, Fila maintains, because "[t]he right to operate a liquor establishment with a state[-]issued nightclub license free of excessive and unreasonable police interference is clearly recognized" under federal court precedents, such that "any reasonable police officer" would have realized that the conduct Fila alleged violated that right. Br. of Appellant at 32-34.

A.      Defendants Implicated by Fila's Section 1983 Claim

The WSLCB asserts that "Fila pled no [section] 1983 claim against Director Kohler" and makes "no claim that Murphy deprived Fila of any federal right" in this appeal, leaving "Stensatter as the only remaining individual defendant against whom the [section] 1983 claim was pled." Br. of Resp't at 14. These assertions, however, are not consistent with the record.

Under the heading "Due Process," Fila's complaint states, "This Cause of Action is brought by Plaintiff against *all Defendants* for deprivation of constitutional rights within the meaning of 42 U.S.C.A. § 1983." CP at 45 (emphasis added). The complaint names Kohler as a defendant, and alleges that she failed to investigate or take action against Stensatter despite actual notice of his allegedly unconstitutional actions. Fila submitted to the trial court copies of letters his counsel sent to Kohler notifying her of Stensatter's conduct.

Constitutional deprivations by a subordinate may subject a supervisor to liability under section 1983 if "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation" exists. *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989). Federal courts have imposed such supervisory liability where an official knew or should have known of a subordinate's violations of federally protected rights and failed to act to prevent further

11

misconduct. *McClelland v. Facteau*, 610 F.2d 693, 697 (10th Cir. 1979); *Sims v. Adams*, 537 F.2d 829 (5th Cir. 1976); *Wright v. McMann*, 460 F.2d 126, 134-35 (2d Cir. 1972); *see also Ybarra v. Reno Thunderbird Mobile Home Vill.*, 723 F.2d 675, 680-81 (9th Cir. 1984).

As executive director of the WSLCB, Kohler arguably had supervisory authority over Stensatter. Kohler also had notice of the challenged conduct by Stensatter. Thus, assuming Stensatter's conduct violated a federal right, Fila sufficiently pled a section 1983 claim against Kohler.

The assertion that Fila makes no section 1983 claim against Murphy also is not supported by the record. As discussed, the complaint asserts a section 1983 claim against "all defendants," and it names Murphy as a defendant. CP at 28. The WSLCB points out that Fila's complaint alleged that Murphy violated Fila's Fourth Amendment rights and that Fila later dropped that claim. Fila's complaint, however, also alleged a due process violation against Murphy, and his brief argued that Murphy's conduct gave rise to a valid section 1983 claim. Further, as noted above, Fila's due process claims were not among those he dismissed in his response to the WSLCB's motion for summary judgment.

Thus, while no section 1983 claim remains against the state, the WSLCB as a government agency, or board members Foster, Kurose, and Marr, Fila did plead such a claim against Kohler and Murphy. The questions remain, however, whether Fila sufficiently pled a violation of a federal right, and whether qualified immunity bars his suit.

B. Qualified Immunity and the Right to Pursue an Occupation

The affirmative defense of qualified immunity protects government officials from suits for civil damages based on their performance of discretionary functions, as long as "their conduct does not violate clearly established statutory or constitutional rights of which a

12

reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 815, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). Whether qualified immunity bars a suit generally presents a question of law for the trial court. *Mitchell v. Forsyth*, 472 U.S. 511, 528, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985). The protections of qualified immunity apply regardless of whether the defendant official's alleged error of judgment is "'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) (quoting *Groh v. Ramirez*, 540 U.S. 551, 567, 124 S. Ct. 1284, 157 L. Ed. 2d 1068 (2004) (Kennedy, J., dissenting)).

The United States Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991). To overcome the immunity, (1) the plaintiff must allege facts that, if proved, would "make out a violation of a constitutional right," and (2) the right must have been "clearly established at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232 (internal quotation marks omitted). We first consider whether Fila sufficiently alleged a violation of a protected right. Concluding that he did not, we do not reach the question of whether relevant precedent had "clearly established" the right articulated.

Fila alleges that the WSLCB's employees deprived him of a "liberty or property interest," specifically his "constitutional . . . right to pursue an occupation." Br. of Appellant at 25. Fila characterizes the right at issue as "[t]he constitutional right to operate a liquor establishment with a state[-]issued nightclub license free of excessive and unreasonable police interference." Br. of Appellant at 32-33.

Under well-established federal law, "[a] State cannot exclude a person from [an] occupation in a manner or for reasons that contravene the Due Process or Equal Protection

13

Clause of the Fourteenth Amendment." *Schware v. Bd. of Bar Exam. of State of N.M.*, 353 U.S. 232, 238-39, 77 S. Ct. 752, 1 L. Ed. 2d 796 (1957); *see also Greene v. McElroy*, 360 U.S. 474, 492, 79 S. Ct. 1400, 3 L. Ed. 2d 1377 (1959) (noting that "the right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the 'liberty' and 'property' concepts" and citing cases). Fila directs our attention to *Benigni v. City of Hemet*, in which the Ninth Circuit Court of Appeals held that a trial court had properly submitted to the jury a section 1983 claim based on infringement of the right to pursue an occupation, where the evidence sufficed to show "excessive and unreasonable police conduct was intentionally directed toward Benigni's bar to force him out of business." 879 F.2d 473, 478 (9th Cir. 1988).

*Benigni*, however, helps Fila far less than he contends. First, Fila's allegations against the WSLCB's employees are much less egregious than the police conduct addressed in *Benigni*, 879 F.2d at 478:

> The testimony reveals that bar checks occurred nightly, up to five or six times per night, that customers were frequently followed from the [bar] and sometimes arrested, that staff and customers frequently received parking tickets, that officers parked at the old train depot across the street, and that there were usually three or four officers there at all times in the evening, and that cars were often stopped in the vicinity of the [bar] for traffic violations that had occurred elsewhere.

Furthermore, the defendants there failed to object to the trial court's instructions on Benigni's due process claim, and the reviewing court therefore declined to "address the adequacy of [those] instructions," instead considering only "whether there is evidence supporting the verdict sufficient to justify submitting the various theories of liability to the jury." *Benigni*, 879 F.2d at 476. The *Benigni* court therefore did not consider the precise nature or scope of the right identified.

Most importantly, subsequent precedents have more narrowly delineated the contours of the relevant right: the Ninth Circuit Court of Appeals later specified that, to successfully plead a substantive due process violation based on the right to pursue an occupation, the plaintiff must show that "'clearly arbitrary and unreasonable'" state action "'having no substantial relation to the public health, safety, morals, or general welfare'" prevented the plaintiff from pursuing comparable employment in the relevant industry. *Wedges/Ledges of Cal. Inc. v. City of Phoenix, Ariz.*, 24 F.3d 56, 65 (9th Cir. 1994) (quoting *Vill. of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395, 47 S. Ct. 114, 71 L. Ed. 303 (1926)). Under this standard, Fila has raised no material issue of fact that would require reversal of the trial court's summary judgment order.

First, Fila did not submit evidence showing that the WSLCB employees' conduct prevented him from operating Club Level, let alone from pursuing any comparable employment in the industry. The plaintiff in *Benigni* had alleged that police "harassment eventually forced him to sell at a loss." *Benigni*, 879 F.2d at 475. Fila does allege in his brief, without citation to the record, that "significantly declining revenues caused by the undue attention" of the WSLCB and WPD "forced [Fila] to close Club Level in May 2013." Br. of Appellant at 27-28. The only support for the claim in the record consists of Fila's counsel's statement at the hearing on the WSLCB's motion for reconsideration that the "behavior and the pressure placed upon him by these various law enforcement agencies in Chelan County" had forced Fila to close Club Level. Verbatim Report of Proceedings (Aug. 9, 2013) at 24. Argument from counsel, however, is not evidence. *Green v. A.P.C.*, 136 Wn.2d 87, 100, 960 P.2d 912 (1998).

Were we to overlook these deficiencies, Fila must still show that defendants' conduct was clearly arbitrary and unreasonable and bore no substantial relation to public health or safety to show a deprivation of the right to pursue an occupation under substantive due process.

*Wedges/Ledges*, 24 F.3d at 65. Fila does not claim that Stensatter issued citations without probable cause to believe that the violations had occurred and points to no evidence, other than the somewhat suspicious timing of one of the citations, that the WSLCB's employees acted with a retaliatory motive. Fila availed himself of state law procedures each time the employees took adverse action against him.

Further, the state action Fila alleges has a substantial relationship to protecting public health and safety. The legislature explicitly adopted the laws that the WSLCB enforces "for the protection of the welfare, health, peace, morals, and safety of the people of the state." RCW 66.08.010. According to unrebutted evidence in the record, in the period leading up to the challenged conduct, more persons arrested in Wenatchee for driving under the influence reported last obtaining alcohol from Club Level than from any other bar. The analysis of police incident logs that Fila submitted to the superior court, showing a much higher level of police activity at Club Level than at other Wenatchee bars, also showed that 139 of the 183 incidents of police involvement there between August 2010 and August 2012 originated with complaints from patrons or Club Level staff. This figure amounted to more than double the number of patron- and staff-initiated incidents for any other bar analyzed. In light of these numbers, the WSLCB's employees could quite reasonably have decided, in the interest of public safety, to target Club Level for heavier enforcement than other local bars.

Fila did not submit evidence showing either that the employees' conduct prevented him from operating a bar or that the challenged conduct bore no substantial relation to public health, safety, or welfare. Under the standard articulated in *Wedges/Ledges*, 24 F.3d at 65, the uncontroverted evidence fails to show any violation of the substantive due process right to pursue an occupation. With that, Fila has failed to show the most basic element of any claim

16

under 42 U.S.C. section 1983, the deprivation of a federal right. For the same reason, Fila's claim also founders on the first prong of the qualified immunity test, since Fila has not alleged facts that would "make out a violation of a constitutional right" under *Pearson*, 555 U.S. at 232. The trial court did not err in dismissing Fila's section 1983 claim on summary judgment.

### III. NEGLIGENT SUPERVISION

Fila also contends the trial court erred in dismissing his claim that Kohler and the WSLCB negligently supervised Murphy and Stensatter. The WSLCB maintains that the court properly dismissed the claim because, "where the employer admits that the employee acted within the scope of employment[,] a cause of action for negligent supervision is redundant." Br. of Resp't at 25. The WSLCB also argues that Kohler cannot be liable for Murphy's or Stensatter's conduct under this theory because she was not their employer and that Fila's evidence at most shows only that Kohler decided not to respond to letters from Fila's attorney.

The doctrine of vicarious liability or respondeat superior "imposes liability on an employer for the torts of an employee who is acting on the employer's behalf." *Niece v. Elmview Grp. Home*, 131 Wn.2d 39, 48, 929 P.2d 420 (1997). Under this doctrine, "the scope of employment limits the employer's vicarious liability . . . [for] the employee's negligence or intentional wrongdoing." *Niece*, 131 Wn.2d at 48. Thus, if "the employee steps aside from the employer's purposes in order to pursue a personal objective of the employee, the employer is not vicariously liable." *Niece*, 131 Wn.2d at 48. Whether an employee acted within the scope of employment ordinarily presents a question of fact for the jury. *Gilliam v. Dep't of Soc. & Health Servs.*, 89 Wn. App. 569, 585, 950 P.2d 20 (1998).

"Even where an employee is acting outside the scope of employment," however, employers also owe a duty "to foreseeable victims[] to prevent the tasks, premises, or

instrumentalities entrusted to an employee from endangering others." *Niece*, 131 Wn.2d at 48. "This duty gives rise to causes of action for negligent hiring, retention and supervision," causes of action "based on the theory that such negligence on the part of the employer is a wrong to [the injured party], entirely independent of the liability of the employer under the doctrine of respondeat superior." *Niece*, 131 Wn.2d at 48 (internal quotation marks omitted). The theories are not entirely independent, however: we have held that "a claim for negligent hiring, training, and supervision is generally improper when the employer concedes the employee's actions occurred within the course and scope of employment." *LaPlant v. Snohomish County*, 162 Wn. App. 476, 480, 271 P.3d 254 (2011).

> The issue presented centers on the following holding from *Gilliam*:
>
> Here, the State acknowledged [the employee] was acting within the scope of her employment, and that the State would be vicariously liable for her conduct. Under these circumstances a cause of action for negligent supervision is redundant. If Gilliam proves [the employee's] liability, the State will also be liable. If Gilliam fails to prove [the employee's] liability, the State cannot be liable even if its supervision was negligent. We find no error in the trial court's dismissing the cause of action.

89 Wn. App. at 585. Fila points to the *LaPlant* court's discussion of a federal case, *Tubar v. Clift*, No. C05-1154-JCC, 2008 WL 5142932 (W.D. Wash. 2008), in which a federal district court distinguished *Gilliam*:

> In *Tubar*, Kent Police Officer Jason Clift discovered a stolen vehicle in the parking lot of Tubar's apartment building and waited in the bushes for the driver to return. When she did, accompanied by Tubar, Clift announced his presence, which was ignored. As Tubar and the driver drove out of the parking lot and toward Clift, Clift fired three shots, injuring Tubar. Tubar brought a lawsuit against the City of Kent and Officer Clift, alleging a 42 U.S.C. section 1983 claim and state law claims for negligent hiring, training, supervision, and retention.
> The City argued that Washington case law precluded Tubar's state law claims, relying on *Gilliam*. The court distinguished *Gilliam* on the basis that Tubar had not asserted a negligence claim against Clift individually:

18

> Here, there is no such redundancy because Plaintiff has not asserted a negligence claim against Officer Clift for which the City would be vicariously liable by admission. Instead, Plaintiff claims that the City itself is negligent for breaching its own standard of care with respect to the hiring, supervision, and training of Officer Clift. [*Tubar*, 2008 WL 5142932 at *7].
>
> We distinguish *Tubar* from LaPlant's case for the same reason. As in *Gilliam*, LaPlant has asserted a negligence claim against the deputies for which the County would be vicariously liable. *Tubar* is inapposite.

*LaPlant*, 162 Wn. App. at 482-83 (footnotes omitted). From this, Fila contends that, because he asserted no negligence claim against Murphy or Stensatter, his negligent supervision claim against Kohler was not redundant.

Fila's argument fails. Although he did not assert a *negligence* claim against Murphy or Stensatter, he did assert other state law claims for which the WSLCB or state would be vicariously liable. Because the WSLCB's liability for negligent supervision would depend on the establishment of claims against Murphy and Stensatter for which the liquor board admits it would be vicariously liable should Fila prevail, *Gilliam* and *LaPlant* control. The negligent supervision claim is redundant, and the trial court did not err in dismissing it.[3]

## IV. CIVIL CONSPIRACY

Fila contends that the trial court erred in dismissing his civil conspiracy claim because it applied an incorrect legal standard. Specifically, Fila points out that the court's letter opinion stated that "the plaintiffs must provide clear, cogent, and convincing evidence" to sustain such a

---

[3] The WSLCB also presents strong arguments that (1) Kohler cannot be liable based on Murphy's and Stensatter's conduct because she is not their employer and that (2) Fila failed to allege facts giving rise to a negligent supervision claim because the only evidence in the record shows that, although Kohler did not respond to letters from Fila's attorney, she did assign an officer to investigate Stensatter. With our decision above, we need not resolve these issues.

claim and argues that this shows that the court failed to view the evidence in the light most favorable to the nonmoving party. We disagree.

As an initial matter, the substantive evidentiary standard at trial necessarily informs the court's inquiry on summary judgment as to whether a material issue of fact remains. *See Herron v. KING Broad. Co.*, 112 Wn.2d 762, 767-68, 776 P.2d 98 (1989). Thus, the trial court did not err in considering the clear, cogent, and convincing standard in its analysis.

To prevail on a civil conspiracy claim, the plaintiff must prove by clear, cogent, and convincing evidence that (1) "two or more persons combine[d] to accomplish an unlawful purpose or . . . to accomplish some purpose not in itself unlawful by unlawful means," and that (2) "the alleged coconspirators entered into an *agreement* to accomplish the object of the conspiracy." *Corbit v. J. I. Case Co.*, 70 Wn.2d 522, 528-29, 424 P.2d 290 (1967). "While a finding that a conspiracy existed may be based on circumstantial evidence, mere suspicion is not a sufficient ground upon which to base a finding of conspiracy." *Corbit*, 70 Wn.2d at 529.

The court dismissed the claim because Fila failed to produce evidence of an agreement to accomplish the unlawful purpose alleged. As the court pointed out,

> [t]he evidence in this file does not show an agreement to harm the plaintiff's business. It merely shows communications between officers and the Liquor Control Board. Those communications are a normal part of their working relationship. The plaintiff has completed discovery and has not demonstrated that the circumstances are reasonably consistent only with the existence of a conspiracy.

CP at 479.

The trial court was correct. The evidence submitted shows only discussions between two law enforcement agencies about attempts to strictly enforce the law against a bar that generated a disproportionate number of requests for police service. Fila failed to demonstrate any possibility

of showing by clear, cogent, and convincing evidence an agreement, an unlawful purpose, or the use of unlawful means. We affirm the trial court's dismissal of Fila's conspiracy claim.

## V. TORTIOUS INTERFERENCE WITH A BUSINESS EXPECTANCY

Finally, Fila contends that the trial court erred in dismissing his tortious interference claim because he provided evidence of all the elements at issue in the case. Again, we disagree.

Our Supreme Court has articulated the elements of a claim for tortious interference with a contractual relationship or business expectancy as follows:

> (1) the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage.

*Leingang v. Pierce County Med. Bureau, Inc.*, 131 Wn.2d 133, 157, 930 P.2d 288 (1997). To prevail on such a claim, a "plaintiff must show not only that the defendant intentionally interfered with his business relationship, but also that the defendant had a 'duty of non-interference; *i.e.*, that he interfered for an improper purpose . . . or . . . used improper means.'" *Pleas v. City of Seattle*, 112 Wn.2d 794, 804, 774 P.2d 1158 (1989) (quoting *Straube v. Larson*, 287 Or. 357, 361, 600 P.2d 371 (1979)).

The only evidence Fila presented of a legitimate contractual relationship or business expectancy concerned his lease with Rodriguez. Fila submitted a declaration in which Rodriguez averred that

> Mr. Fila and I did have a contractual agreement where he would pay me $4,000 per month to lease the space within which he was operating Club Level on the second floor. Mr. Fila was not able to fully comply with this agreement because of declining sales which he had inside Club Level. At this time Mr. Fila still owes me monies which remain unpaid from the terms of this lease.

CP at 448.

Fila, however, points to no evidence that the WSLCB employees knew of his arrangement with Rodriguez. Instead, Fila merely asserts that Murphy and Stensatter must have known about the lease because they knew Rodriguez owned the building. Fila also fails to submit evidence that would raise a material issue of fact as to whether the WSLCB employees had an improper purpose or used improper means. The trial court did not err in dismissing Fila's tortious interference claim on summary judgment.

## CONCLUSION

We affirm the trial court's dismissal of Fila's claims on summary judgment.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Bjorgen, J.

We concur:

Johanson, C.J.

Melnick, J.